# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILLIE EDWARDS,

    Petitioner,

        vs.

BEN CURRY, Warden,

    Respondent.

    On Habeas Corpus.

_____/

BOARD OF PAROLE HEARINGS,
ARNOLD SCHWARZENEGGER, Governor,

    Real Parties In Interest

_____/

Case No.

CV 08 - 1923

[Los Angeles County Sup. Ct. Case No.
BH004240; Second Dist. Ct. of Appeal, Div. 2,
Case No.B204060; Cal. Sup. Ct Case
No. S159343.

CW

E-filing

ORIGINAL
FILED

APR 1 0 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## PETITION FOR WRIT OF HABEAS CORPUS

TRACI S. MASON, Esq.
State Bar # 237663
THE LAW OFFICES OF TRACI S. MASON
45 East Julian Street
San Jose, CA 95112
(408) 286-2808

Attorneys for Petitioner,
WILLIE EDWARDS

TABLE OF CONTENTS...........................................................................i

TABLE OF AUTHORITIES.....................................................................ii

PETITION FOR WRIT OF HABEAS CORPUS.....................................1

JURISDICTION .......................................................................................2

INTRODUCTION.....................................................................................2

BACKGROUND.....................................................................................11

STATEMENT OF THE CASE................................................................15

STATEMENT OF FACTS......................................................................17

LEGAL ARGUMENT............................................................................20

DUE PROCESS VIOLATION...............................................................21

SUPPORTING  EXHIBITS....................................................................24

PRAYER FOR RELIEF.........................................................................25

VERIFICATION....................................................................................26

i

## FEDERAL CASES

Biggs v. Terhune, 334 F.3d 910  (9th Cir. 2003)    passim
Blankenship v. Kane ____ F.Supp.____[2007 WL 1113798]    6, 23
Board of Pardons v. Allen, 482 U.S. 369 (1987)    13
Brown v. Kane, Slip Copy [2007 WL 1288448] (N.D. Cal. 2007)    6, 8, 23
Carey v. Saffold, 536 U.S. 214 (2002)    4
Eddings v. Oklahoma,  455 U.S. 104 (1982)    5
Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1 (1979)    13
Hayward v. Marshall, 512 F3d. 536 (9th Cir. 2008)    6, 8, 9, 12
Irons v. Carey, 479 F. 3d 658 (9th Cir. 2007)    8, 12, 23
Little v. Hadden, 504 F.Supp. 558 (1980)    8
Martin v. Marshall, 431 F.Supp.2d 1038 (N.D. Cal. 2006)    passim
Maynard v. Cartwright, 486 U.S. 356(1988)    24
McCullough v. Kane, Slip Copy [2007 WL 1593227] (N.D. Cal. 2007)    6, 7, 8
McQuillion v. Duncan [McQuillion I] 306 F.3d 895, 901 (9th Cir. 2002)    13, 17, 22
Nino v. Galaza, 183 F.3d 1003 (9th Cir. 1999)    4
Roper v. Simmons, 543 U.S. 551 (2005)    5
Rosenkrantz VI] 444 F.Supp.2d 1063 (C.D. Cal. 2006)    passim
Sanchez v. Kane, 444 F.Supp.2d 1049 (C.D. Cal. 2006)    passim
Sass v. California Bd. of Prison Terms, 461 F.3d 1123(9th Cir. 2006)    22
Sprinkle v. Carey, Slip Copy [2008 WL 564995] (E.D. 2008)    6, 7, 12
Stanford v. Kentucky, 492 U.S. 361 (1989)    5
Thompson v. Oklahoma, 487 U.S. 815 (1988)    5
United States v. Doremus, 888 F.2d 630 (9th Cir. 1989)    24

## STATE CASES

In re Barker, 151 Cal.App.4th 346 (2007)    6, 23
In re Cooper, 153 Cal.App.4th 1043 (2007)    6, 7, 8
In re Dannenberg, 34 Cal.4th 1061 (2005)    passim
In re Elkins, 144 Cal.App.4th 475, 499 (2006)    passim
In re Gray, 151 Cal.App.4th 379 (2007)    passim
In re Lee  143 Cal.App.4th 1400  (2006)    passim
In re Mark Smith, 109 Cal.App.4th  489 (2003)    11, 19
In re Ramirez , 94 Cal.App.4th 549 (2001)    8, 13, 14, 17
In re Rodriguez, 14 Cal.3d 639 (1975)    21
In re Scott 119 Cal.App.4th 871    18
In re Weider, 145 Cal.App.4th 570 (2006)    6, 7, 18, 23
People v. Rosenkrantz, 198 Cal.App.3d 1187 (1988)    6
In re Rosenkrantz, 80 Cal.App.4th 409 (2000)    6
In re Rosenkrantz, 29 Cal. 4th 616 (2002)    13
In re Scott,  133 Cal.App.4th 573  (2005)    passim
Superior Court of Santa Clara County v. Engert, 31 Cal.3d 797(1982)    24

## FEDERAL STATUTES

18 USC §2254    3,4

28 U.S.C. §2254(d)(1)                                              14
U.S. Const. Amends. V                                             22

STATE STATUTES

Cal. Penal Code §3041                            5, 9,11,12,13,14,17 21,22
Penal Code § 3041(a)                                            10, 16

STATE RULES

Code of Civil Procedure §446                                       27

STATE REGULATIONS

Cal. Code Regs., tit. 15 § 2410                                    21
Cal. Code Regs., tit. 15 §2403(c)                                 21

TRACI S. MASON, Esq.
State Bar # 237663
THE LAW OFFICES OF TRACI S. MASON
45 East Julian Street
San Jose, CA 95112
(408) 286-2808

Attorneys for Petitioner,
WILLIE EDWARDS

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILLIE EDWARDS,

     Petitioner,

     vs.

BEN CURRY, Warden,

     Respondent.

     On Habeas Corpus.

_____/

BOARD OF PAROLE HEARINGS[1],
ARNOLD SCHWARZENEGGER, Governor,

     Real Parties In Interest

_____/

Case No.

[Los Angeles County Sup. Ct. Case No. BH004240; Second Dist. Ct. of Appeal, Div 2 Case No.B204060; Cal. Sup. Ct Case No. S159343.

**_PETITION FOR WRIT OF HABEAS CORPUS_**

---

[1]Note that an enactment by the Legislature and Governor, effective 7/1/05, changed the Board of Prison Terms' name to **_Board of Parole Hearings_**. The new Board is comprised of Governor-appointed Commissioners who will hear all parole matters, both juvenile and adult. Individual Commissioners, however, are appointed to hear either adult or juvenile cases, so the day-to-day procedures for the determination of parole of adult, indeterminate-term offenders are virtually unchanged. Hereinafter referred to as "Board" or "Panel."

1

Petitioner, Willie Edwards, a state prisoner inmate, by and through his attorney, Traci S. Mason, hereby petitions this Honorable Court for a writ of habeas corpus ordering Mr. Edwards's discharge from state prison. In support of this verified petition, Mr. Edwards respectfully alleges the following:

### JURISDICTION

This petition is addressed to this Court's original habeas corpus jurisdiction because the issues raised are of Federal Constitutional dimension, questioning the legality of the Petitioner's confinement and any subsequent release on parole, pursuant to 28 *United States Code [USC]* § 2254. On February 27, 2008, Petitioner exhausted his state remedies when the California Supreme Court denied his petition for review. No other federal challenge has been filed to the 2005 Board hearing that is at issue herein with this Court. Mr. Edwards filed a petition for writ of habeas corpus in the Los Angeles County Superior Court on September August 30, 2006, which was denied on September 5, 2007. A true and accurate copy of said denial is attached hereto as exhibit E. Mr. Edwards then filed a petition for writ of habeas corpus in the California Court of Appeal, Second Appellate District on November 30, 2007. That petition was denied on December 13, 2007. A true and accurate copy of said denial is attached hereto as exhibit F. A timely petition for review was then filed in the California Supreme Court, resulting in the previously mentioned denial on February 27, 2008. A true and accurate copy of said denial is attached hereto as exhibit G. These decisions fail to follow clearly established federal law, as articulated by the U.S. Supreme Court, and were based on rulings that were made upon a deficient and literally non-existent fact finding process. As such, the ruling by the state courts resulted in patently arbitrary, unreasonable and wrong findings when applied to the applicable principles of clearly established federal law, in violation of Fourteenth Amendment Due Process protections. Thus, this petition is cognizable under federal question jurisdiction, pursuant to 28 *USC* §2254, and is timely filed under those same provisions.[2]

### INTRODUCTION

This case arises out of Mr. Edwards' *third* parole denial by the Board in the face of a period of incarceration that has now entered a term for the most egregious second degree

---

[2]  Pursuant to *Carey v. Saffold*, 536 U.S. 214, 221-223 (2002) and *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999), all time is tolled from the filing of the first state habeas petition through the denial by the California Supreme Court.

murders, even though Mr. Edwards was not the actual killer and, more importantly, despite clear evidence of suitability. Mr. Edwards was convicted of second degree accomplice murder with use of a firearm arising from the death. By all accounts, including those of the California Department of Corrections and Rehabilitation's (hereinafter "CDCR") own expert psychologists, Mr. Edwards currently poses absolutely *no* threat to public safety. He has never exhibited behavior indicative of violence potential, has taken full advantage of rehabilitative programming offered by the CDCR, has painstakingly sought out spiritual growth through Christianity and intellectual growth through college study. He has received several psychological evaluations over the years, each concluding that Mr. Edwards does not suffer from any mental disorders and that if released, would pose *no more danger to society than the average citizen on the streets*. Exh. B, pp. 99-111.[3] However, despite full clearance from the CDCR's own experts, on September 29, 2005, the Board continued its established practice of arbitrarily denying Mr. Edwards' parole in contravention of clear mandates set forth in *Cal. Penal Code* §3041 and *California Code of Regulations*, Title 15 [hereinafter "*Cal. Code regs.*, tit. 15"] §§2400 *et seq.*. Not only was the denial baseless, but the length of the denial was *completely* unjustified. The Board denied Mr. Edwards parole for *four (4)* years. As will be seen, the Board's denial is effectively based solely on the immutable facts surrounding Mr. Edwards' commitment offense.

Mr. Edwards' case is further compelling due to the fact that he was *only nineteen (19) years of age when the commitment offense occurred* and over the last nineteen (19) years, he has used his time in prison to rehabilitate himself and has tirelessly worked to prepare for eventual release. Clearly, Mr. Edwards' age and demonstrated change elucidate the unfairness of relying solely on the commitment offense as a reason for parole denial. As held by the United States Supreme Court in *Roper v. Simmons*, the personality traits of juveniles are more transitory and less fixed than adults. *Roper v. Simmons*, 543 U.S. 551, 568-571 (2005). As such, the susceptibility of juveniles to immature and irresponsible behavior means that "their irresponsible conduct is not as morally reprehensible as that of an adult." *Ropers v. Simmons, supra*, 543 U.S. 551, 553 quoting *Thompson v. Oklahoma*, 487 U.S. 815, 835 (1988). Their own vulnerability and comparative lack of control over their immediate surroundings mean juveniles have a greater claim than adults to be forgiven for failing to escape negative influences in their environments.

---

[3] Petitioner has submitted an Appendix, that includes Exhibits A through H [hereinafter "App." & "Exh."]

(*Id.* citing *Stanford v. Kentucky*, 492 U.S. 361, 395 (1989). In short, the United States Supreme Court has made it clear that juveniles are more vulnerable to negative influences, and because of their immaturity and transitory states, they cannot, with reliability, be classified among the worst offenders and are more able to reform and change due to their age. *Ropers v. Simmons, supra,* 543 U.S. 551; *see also Eddings v. Oklahoma,* 455 U.S. 104, 115-116 (1982); *Thompson v. Oklahoma, supra,* 487 U.S. at 835; *Stanford v. Kentucky, supra,* 492 U.S. at 395. That is precisely the case here, when, at the time of the commitment offense, Mr. Edwards was a malleable youth, seriously influenced by peer pressure. However, that was nineteen (19) years ago, and since that time, Mr. Edwards has totally reformed his previous character, has grown and matured as evidenced by all reports, and is no longer the juvenile who was vulnerable and impressionable. It is this incredible transformation, coupled with his age at the time of the offense, and the rehabilitative purpose of the correctional system that makes the repeated denials based solely on the commitment offense so iniquitous.

Mr. Edwards is now seeking habeas relief after three (3) parole denials and a term of incarceration equivalent to the term for the most egregious of second degree murders prescribed under the Matrix of Base Terms set forth in *Cal. Code Regs.*, tit. 15, §2403(c), and with good time credit, has entered the term for premeditated, deliberated first degree murder, despite the fact that Mr. Edwards was not the actual shooter, was convicted on a theory of accomplice liability, and was originally offered a plea of manslaughter.

Current case law at both the state and federal level has made clear that the denial of parole by the Board or Governor when there is no evidence rationally showing that the inmate is currently dangerous requires a reversal of the denial of parole. *In re Scott* [hereinafter *Scott II*],[4] 133 Cal.App.4th 573,594-595 (2005); *In re Lee*[5] 143 Cal.App.4th 1400, at 1408-1409 (2006)[req. for depubl. denied at S149411];*In re Elkins*, 144 Cal.App.4th 475, 499, 521 (2006) [pet'n for rev.

---

[4] There are two "*Scott*" decisions. The first was the reversal of the Board's denial of parole, *In re Scott [Scott I]*, 119 Cal.App.4th 871 (2004). The second was the reversal of the Governor's action taking Scott's parole date granted at the hearing after the decision in *Scott I. In re Scott [Scott II]*, 133 Cal. App.4th 573 (2005). They will be differentiated herein by the roman numeral designations I & II.

[5] In *Lee*, the grant of relief by the Court of Appeal did not occur until after that court had originally denied the habeas petition. The petitioner filed for review in the California Supreme Court, and after briefing, the Court granted review and remanded the case back to the court of appeal, directing that they issue an order to show cause, and reconsider the denial. *In re Lee*, Case #S142267. The above cited published decision followed that remand. Then, on February 7, 2007 the California Supreme Court denied the Governor's request to de-publish the *Lee* decision. (Cal. Supr. Ct. Case #S149411.)

4

& req. for depubl. denied at S148058; applic. for stay denied, at S147840]; *In re Weider*, 145 Cal.App.4th 570, 589-590 (2006); see also *Hayward v. Marshall,* 512 F.3d. 536 (9th Cir. 2008); *Sanchez v. Kane,* 444 F.Supp.2d 1049 (C.D. Cal. 2006); *Rosenkrantz v. Marshall* [hereinafter *Rosenkrantz VI*][6] 444 F.Supp.2d 1063, 1085 (C.D. Cal. 2006); *Martin v. Marshall*, 431 F.Supp.2d 1038 (N.D. Cal. 2006); *Blankenship v. Kane* ____F.Supp.___[2007 WL 1113798] (2007 N.D. Cal); *Brown v. Kane,* Slip Copy [2007 WL 1288448] (N.D. Cal. 2007); *In re Barker,* 151 Cal.App.4th 346 [59 Cal.Rptr.3d 746, at 760] (2007); *In re Cooper,* 153 Cal.App.4th 1043 (2007); *McCullough v. Kane,* Slip Copy [2007 WL 1593227] (N.D. Cal. 2007); *In re Gray,* 151 Cal.App4th 379 [59 Cal.Rptr.3d 724, 740-741] (2007) [depubl. request denied at S153831]; *Sprinkle v. Carey,* Slip Copy [2008 WL 564995] (E.D. 2008). This doctrine was first enunciated in *Scott II*, where the California Court of Appeal, First District, announced the rule that the focal issue is ***current*** dangerousness, and with the passage of time, the probative value of the crime based evidence declines until it can no longer show the inmate remains a danger to society. *Scott II, supra,* at 594-595. Importantly, *Scott II* was decided subsequent to *In re Dannenberg*, 34 Cal.4th 1061 (2005), and the Supreme Court not only denied review, but they refused the Governor's separate requests to block Scott's release and to de-publish the opinion. *In re Scott,* Cal. Supr. Ct. Case #S138430. Similarly, this Court in the recent decision of *Martin v. Marshall* held that petitioner "cannot change the past" and denying him parole based solely on these immutable facts "effectively changes his sentence" from fifteen years to life "into life imprisonment without the possibility of parole." *Martin v. Marshall*, 431 F.Supp.2d 1038 (N.D. 2006) The Federal Central District Court also held in the recent decision in *Rosenkrantz VI* that "[c]ontinued reliance upon the unchanging characterization of petitioner's offense amounts to converting petitioner's sentence of seventeen years to life to a term of life without the possibility of parole." *Rosenkrantz VI, supra,* 444 F.Supp.2d at 1082; see also *Sanchez, supra, Lee, supra, Elkins, supra.*

   This focus on ***current*** dangerousness directly follows from the Board's own regulations, *Cal. Code Regs.*, tit. 15, §§2402(c), which only permit the denial of parole when the inmate

---

[6] The *Rosenkrantz* case has now resulted in six decisions. *People v. Rosenkrantz,* 198 Cal.App.3d 1187 (1988)(*Rosenkrantz I*), *In re Rosenkrantz,* 80 Cal.App.4th 409 (2000), (*Rosenkrantz II*), *Davis v. Superior Court* [*Rosenkrantz*] (Feb. 22, 2001, B146421) [non pub. opn.] (*Rosenkrantz III*), *In re Rosenkrantz,* formerly published at 95 Cal.App.4th 358 (2002) (*Rosenkrantz IV*), *In re Rosenkrantz,* 29 Cal.4th 616 (2002) (*Rosenkrantz V*), and *Rosenkrantz v. Marshall,* 444 F.Supp.2d 1063 (C.D.Cal. 2006) (*Rosenkrantz VI.*)

"presents an unreasonable risk of danger" to the public if released. Furthermore, the law is now equally clear that a court reviewing a Board's denial must examine whether "some evidence" exists to support a determination that the inmate currently poses an unreasonable threat to society, not whether "some evidence" exists to support the *reasons* given by the Board in making its determination. *Lee, supra,* 143 Cal.App.4th at 1408. In other words, not just the bare findings (i.e., multiple victims, victim opposition, etc.) are viewed, but the Court is to evaluate if those findings rationally provide evidentiary support for concluding that the inmate is currently dangerous. *Id.* See also *Scott II, supra,* 133 Cal.App.4th at 595; *Elkins, supra,* 144 Cal.App.4th at 499; *Weider, supra,* 145 Cal.App.4th at 589-590; *Sanchez, supra,* 444 F.Supp.2d 1049; *Rosenkrantz VI, supra,* 444 F.Supp.2d 1063; *Martin, supra,* 431 F.Supp.2d 1038; *In re Cooper,* 153 Cal.App.4th 1043 (2007); *McCullough v. Kane,* Slip Copy 2007 WL 1593227 (N.D. Cal. 2007); *Sprinkle v. Carey,* Slip Copy [2008 WL 564995] (E.D. 2008) . Here, no such connection can be made.

　　Mr. Edwards' ***third*** parole denial, challenged herein, reflects an utter failure of the parole system to rationally provide an evidentiary support that Mr. Edwards ***currently*** poses a risk of danger if released and is therefore, a clear infringement upon his due process rights. See *Little v. Hadden,* 504 F.Supp. 558, 562 (1980) ["It is simply irrational for seriousness of the offense to be used first to determine the appropriate [matrix] period [to be served] and then to be used again as the stated reason for confining a person beyond that guideline.' [Citations.]"]; see also *Biggs v. Terhune,* 334 F.3d 910　(9th Cir. 2003) [In the face of evidence of rehabilitation, where the inmate does not demonstrate a continuing danger, it is a violation of due process to deny parole based on factors that will never change]; see also *In re Ramirez*[7], 94 Cal.App.4th 549 (2001); see also *Brown v. Kane, supra,* Slip Copy [2007 WL 1288448]; *Sanchez v. Kane, supra,* 444 F.Supp.2d 1049; *Rosenkrantz VI, supra,* 444 F.Supp.2d 1063; *Martin v. Marshall, supra,* 431 F.Supp.2d 1038; *Hayward v. Marshall,* 512 F3d. 536 (9th Cir. 2008); In re Lee, supra, 143 Cal.App.4th 1400; *In re Elkins, supra,* 144 Cal.App.4th 475; *Scott II, supra,* 133 Cal. App. 4th 573; *In re Cooper,*　153 Cal.App.4th 1043 (2007); *McCullough v. Kane* (N.D. Cal. 2007) Slip Copy [2007 WL 1593227.) As will be seen, the immutable facts surrounding Mr. Edwards's

---

[7]　The California Supreme Court disapproved only of that portion of the *Ramirez* decision that requires a comparative, proportionality analysis of the crime with other similar offenses. The balance of the *Ramirez* decision was not overruled.

6

commitment offense have lost the probative value of whether or not Mr. Edwards currently poses a risk of *danger over nineteen (19) years later. Biggs, supra,* 334 F.3d 910. Further, the Ninth Circuit has recently indicated again that reliance on immutable facts to repeatedly deny parole will violate due process. *Irons v. Carey,* 479 F. 3d 658, 665 (9th Cir. 2007) [hereinafter "*Irons II*"] ["indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes."] Thus, with the recent decision in *Irons II,* it is clear that the Board's denial of parole at Mr. Edwards's 2005 hearing violates due process as Mr. Edwards has surpassed his minimum date and there is no evidence that Mr. Edwards is a *current* danger to society if released. See also, *Hayward v, Marshall, supra,* 512 F3d. 536.

It is further respectfully submitted that the California state courts' decision denying Mr. Edwards's writ of habeas corpus was in error. The only reasoned decision issued by the California Courts[8] was the Los Angeles County Superior Court's decision. It is respectfully submitted that the Los Angeles County Superior Court's decision denying Mr. Edwards' Writ of Habeas Corpus was in error. The Los Angeles County Superior Court's decision failed to reflect the focus on *current* dangerousness and instead summarily stated that "some evidence" existed to support the Board's finding that the commitment offense was carried out in a calculated and dispassionate manner. Exh. E, pp. 313-314. Further, the court also found "some evidence" existed to support the Board's finding that Mr. Edwards' institutional behavior supports an unsuitability finding. *Id.* The superior court held that Mr. Edwards' actions were "calculated" and "dispassionate." Exh. E, p. 313. This was found despite the fact that Mr. Edwards was convicted of second degree accomplice murder, and that he was originally offered a plea for manslaughter and in the face of there being no evidence to support the findings. In no way did the court address the Board's failure to connect such allegations to any evidence that Mr. Edwards would pose a *current* risk of dangerousness if released. *See generally* Exh. E. Moreover, the Los Angeles County Superior Court failed to address the merits of the unwarranted *four (4) year denial* which the Board rendered, in essence affirming the Board's restatement of the reasons it used to justify denying parole. *Id.* at p. 314.

---

[8] The California Court of Appeal and the California Supreme Court summarily denied Mr. Edwards's writ of habeas corpus. See exhibits F & G.

7

The purpose of incarceration for indeterminate-sentenced prisoners in California, like Mr. Edwards, is to rehabilitate the offender and make it safe to release him to society without posing an unreasonable risk to the public. Mr. Edwards presents precisely such a case, wherein the facts presented by the record itself reveal that he has worked hard to reform and is now a man who is entitled to a release date. But instead of recognizing Mr. Edwards for his substantial efforts and achievements in transforming himself into a man who embraces non-violence and respect for society, the Board refused to recognize its obligation and failed to comply with the dictates of *Penal Code* §3401. *Further aggravating an already unjust denial, the Board denied Mr. Edwards for an unwarranted four (4) years.*

This point was recently made abundantly clear in *Rosenkrantz v. Marshall*, where the Federal Central District Court stated:

> While it would not be a constitutional violation to forego parole altogether for certain crimes, what the state cannot constitutionally do is have a sham system where the judge promises the possibility of parole, but because of the nature of the crime, the BPT effectively deletes such from the system. Nor can a parole system, where parole is mandated to be determined on someone's future potential to harm the community, constitutionally exists where despite 20 or more years of prison life which indicates the absence of danger to the community in the future, the BPT commissioners revulsion towards the crime itself, or some other unchanged circumstance, constitutes the alpha and omega of the decision." *Rosenkrantz VI, supra,* 444 F. Supp. 2nd 1063.

The Board further violated Mr. Edwards's due process rights by relying on unconstitutionally vague terms to categorize his commitment offense and again deny his parole. As presented in *Rosenkrantz V*, "the nature of the prisoner's offense, alone, *can* constitute a sufficient basis for denying parole." *Rosenkrantz V, supra,* 29 Cal.4th at 682 [emphasis added]. The *Rosenkrantz V* decision employed conditional language that the offense can constitute such a basis, if the crime could reasonably be considered *more* aggravated or violent than the minimum necessary to sustain a conviction for that offense. *Id.* at 683, emphasis added. Although the *Rosenkrantz V* language is itself arguably unconstitutionally vague, the California Supreme Court, in that decision, did state a clear directive that sole reliance on the commitment offense will violate the prisoners' due process rights pursuant to *Penal Code* § 3041(a) in situations where the offense "could [not] be considered *more* aggravated or violent than the minimum necessary to sustain a conviction for that offense." *Rosenkrantz V,* 29 Cal.4th at 683.

However, the subsequent *Dannenberg* decision has been interpreted by the Board and Governor as changing the standard in *Rosenkrantz V*, allowing the denial of parole based on the commitment offense simply if the inmate's crime was "more than minimally necessary to convict him of the offense for which he is confined." *Dannenberg*, supra, 34 Cal.4th at 1095. Thus, the Board applies the standard that was meant for court review to parole eligibility hearings, rather than considering the issue of parole suitability under a factual proof standard. As noted by the dissent in *Dannenberg*, this standard is **completely** unreviewable, and applied in the manner that the Executive branch is doing, it results in all crimes, regardless of their egregiousness being the basis for the denial of parole. *Id.* at 1102, emphasis added. As will be seen, the Board considers every murder to be "especially heinous, atrocious or cruel" at some point, and thus the standard has lost its meaning, and the "public safety" exception has now been used to "swallow the rule" of parole suitability. *Rosenkrantz VI, supra*, 29 Cal. 4th at 683. As applied, every murder is fit into the category of "more than minimally necessary to convict" rendering that characterization necessarily arbitrary, as it depends on the subjective and personal opinions of the Board members. As such, the Board has fully exploited and abused this carte blanche language to repeatedly deny Mr. Edwards' parole, based **solely** on the nature of his commitment offense, by deeming his crime "exceptionally callous disregard to human suffering," and "committed in an especially cruel manner." Exh. A at pp. 68;72.

Aside from commitment offense-based allegations, there is nothing in Mr. Edwards' record even remotely indicative of violence potential.[9]   Mr. Edwards has devoted himself to vocational, educational, and spiritual advancement throughout his incarceration. He has obtained his GED, completed multiple courses at the college level, obtained various certificates of vocational and emotional achievement and consistently received laudatory chronos in his prison work and for his participation and leadership in Alcoholics Anonymous (hereinafter "AA") and Narcotics Anonymous (hereinafter "NA") for the last several years. *See generally* Exh. B, pp. 134-199; Exh. C, pp. 239-277. Lastly, Mr. Edwards has been unequivocally devoted to spiritual growth while incarcerated, having documented participation and accomplishment in the practice of Christianity and interfaith religious scripture. Exh. B, p. 144; Exh. B, 194; Exh. C, p. 239. It

---

[9] On 9-07-1996, Mr. Edwards received a CDC-115 for Threatening Staff; however, this was a non-violent disciplinary Exh. B, p. 200.

is clear that Mr. Edwards' commitment to self-help and spiritual development is fully consistent with psychological clearances proffered by the CDCR's own clinicians, who have *repeatedly* indicated that there are no psychological impediments to Mr. Edwards' parole, and that his violence potential is "no more than the average citizen in the community" and "low." Exh. B, pp. 102, 107. Thus, there is every indication that his growth over nearly two decades has transcended traditional notions of what an inmate should strive to achieve while incarcerated.

Although he has received a total of six (6) CDC 115's, none are indicative of violence potential;[10] the only criteria available to the Board to continuously deny parole in the face of otherwise patent suitability. See *Cal. Penal Code* §3041. *It must also be noted that five (5) of the 115s occurred early on in Mr. Edward's incarceration.* The most recent occurred in 2004 and was an administrative 115 for having a pie tin in his cell. As stated in the 2005 psychological report authored by Dr. Macomber, "In considering his potential for dangerous behavior within the institutional environment, inmate Edwards has several minor disciplinaries. *These disciplinaries do not indicate a potential for dangerous behavior.* There is no evidence of possession of weapons, participation in riots, drug trafficking, or other dangerous behavior. *His last disciplinary was possession of a cooking utensil[11] that he used to cook food with in his cell. Based on his maturity and prosocial attitude, his potential for violence is below average in comparison to other inmates.*" Exh. B, p. 102, emphasis added. It is apparent that Mr. Edwards's commitment to self-help and spiritual development is fully consistent with psychological clearances authorized by the CDC's own clinicians, who have *repeatedly* indicated that there are no psychological impediments to Mr. Edwards's parole, and that his violence potential would be comparable to that of the average citizen in the community. Exh. B at 102. There is every indication that his growth over the last two decades has transcended traditional notions of what a model inmate should strive to achieve while incarcerated.

---

[10] During his over nineteen (19) years of incarceration, Mr. Edwards has received nine (9) non-disciplinary CDC-128A custodial counseling chronos. However, 128A's are not disciplines for parole suitability purposes. *In re Mark Smith*, 109 Cal.App.4th 489 (2003); *In re Gray*, 151 Cal.App4th 379 (2007) [59 Cal.Rptr.3d 724, 740-741] [depubl. request denied at S153831].

[11] On May 22, 2004, Mr. Edwards received an administrative 115 for keeping a pie tin in his cell with which he prepared occasional food items. Exh. A, p. 41.

In short, Mr. Edwards has proven himself worthy of release under the explicit mandates of *Penal Code* §3041. However, despite the absence of any evidence disputing Mr. Edwards's suitability or that Mr. Edwards poses any risk of danger or violence to the community if released, the Board again refused to set the statutorily mandated parole release date for the third time. Such repeated denials indicate a clear violation of liberty and federal due process principles, such that *Penal Code* §3041 vests all "prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." *Irons II, supra*, 479 F. 3d at 662 [citations omitted; see also, *Biggs*, 334 F.3d at 915; *Hayward, supra*, 512 F3d. 526, *Scott II*, 133 Cal. App. 4th 573; *Sanchez*, 444 F.Supp.2d 1049; *Rosenkrantz VI*, 444 F.Supp.2d 1063; *Martin, supra*, 431 F.Supp.2d 1038; *Lee*, 143 Cal.App.4th 1400; *Elkins*, 144 Cal.App.4th 475; *Sprinkle v. Carey*, Slip Copy [2008 WL 564995] (E.D. 2008). The result is that Mr. Edwards is not being afforded the due process required by *Penal Code* §3041. This denial of due process requires the intervention of this Court by way of the issuance of a Writ of Habeas Corpus.

## BACKGROUND

On July 1, 1977, the State Legislature enacted the current version of that statute, which establishes that the Board of Prison Terms "***shall normally*** set a parole release date" for state prison inmates serving term-to-life sentences, and must do so at the initial parole hearing. The United States Supreme Court has determined that a state's statutory parole scheme, if it uses mandatory language, creates a presumption that parole release will be granted upon certain conditions, thereby give rise to a constitutionally protected liberty interest. *Board of Pardons v. Allen*, 482 U.S. 369, 376-78 (1987); *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 11-12 (1979). Thus, a prisoner gains a legitimate expectation in parole that cannot be denied without adequate procedural due process when certain language is used. *Allen, supra*, 482 U.S. at 373-81; *Greenholtz, supra*, 442 U.S. at 11-12. It has further been determined that *Penal Code* § 3041's mandatory language creates a presumption that the inmate will have a parole release date set at that first hearing. *McQuillion v. Duncan [McQuillion I]* 306 F.3d 895, 901 (9th Cir. 2002) ["The scheme creates a presumption that parole release will be granted."]; *Biggs v.*

11

*Terhune*, 334 F.3d 910, 915-916 (2003) ["[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate."]

Thus, the Board's authority is limited in that it must usually grant parole, must do so at the initial hearing, and only has authority to deny it in "particularly egregious" cases, or the gravest of murders. *In re Ramirez*, 94 Cal.App.4th 549, 560 (2001); *Rosenkrantz V, supra*, 29 Cal. 4th 616. As the Board's authority is derived from *Penal Code* §3041, it is required to follow the statutory and regulatory guidelines regarding parole. Both, however, it has adopted a policy of denying parole to virtually all term-to-life and life inmates. In affect, the Board has implemented an illegal policy under which it fails to follow the mandate of *Penal Code* §3041 that parole dates "shall normally" be set, resulting in routine summary denials of parole without meaningful review of the facts. In carrying out the policy, the Board consistently relies on a number of standardized but factually inapplicable grounds in order to claim that otherwise suitable inmates should not be paroled. For example, here, the Board characterized the crime as "demonstrating an exceptionally callous disregard for human suffering" and "committed in an especially cruel manner," that was "calculated" and for which "the motive for the crime is very trivial." Exh. A, pp. 70-73. However, these findings are wholly unsupported by factual evidence, employ unconstitutionally vague terms and were improperly used to deny parole to Mr. Edwards after demonstrated uncontroverted rehabilitation and positive psychological evaluations from the CDCR's own clinicians. Thus, although the inmate is clearly showing that he has fully rehabilitated himself, the unchanging facts of the commitment offense are being used time after time to avoid ever following the statutory mandate that parole dates "normally" be set. *Biggs v. Terhune, supra*, 334 F.3d 910.

This unlawful policy is further compounded by the California Supreme Court's decision in *Dannenberg* 34 Cal. 4th 1061 (2005) which allows for complete deference to the either the Board's or the Governor's denials which violates the liberty interest established by the language in *Penal Code* § 3041 without affording the prisoner any due process rights.

The current policy of summarily denying parole to term to life inmates is in direct conflict with the statutory mandate that they ***shall*** normally grant parole. The method of summary denials has come under increasingly intense scrutiny by California's Judicial and Legislative Branches as an improper application of the law. Further, the Board and the Governor

have violated the due process rights of prisoners by infringing upon their liberty interest in parole created by *Penal Code* §3041. In the case of *In re Ramirez*, the court held that the Board relied on inapplicable factors of unsuitability in order to deny parole. *In re Ramirez, supra*, 94 Cal.App.4th at 571-72. Concluding that the record was insufficient to support the Board's claimed findings, the court ordered a new Board hearing to be held in accord with established principles of due process. *Id.*

Here, the Board has denied Mr. Edwards his liberty interest in parole, thereby violating his right to due process. It is this right to parole under the circumstances of this case, a right clearly established under the Supreme Court's decision in *Greenholtz* that serves as the initial basis for relief herein. 28 U.S.C. §2254(d)(1). In denying Petitioner a parole release date, the Board cited inapplicable unsuitability factors, overlooked the uncontradicted evidence establishing suitability, and ignored Mr. Edwards's compliance with the previous recommendations by the Board and excellent programming. However, the state courts, in ruling on the habeas petition, applied an incorrect standard of proof, giving deference to a decision that lacked *any* indicia of reliability, applied the wrong standard of review for the appellate process and made factual determinations that are clearly unreasonable, in addition to incorrectly applying and relying on factors of suitability and unsuitability. Despite the total absence of evidence showing Mr. Edwards to be unsuitable, the Board's refused to grant him parole, and the state courts completely deferred to the Board's findings in determining that this decision was supported by "some evidence" in the record. However, the Board's "some evidence" was the crime itself, which the Board relied on to deny his parole, reciting constitutionally vague and inapplicable terms to categorize the offense. For instance, despite being convicted of second degree accomplice murder and being offered a plea for manslaughter in exchange for testimony against co-defendants,[12] the Board supported their denial by stating that the "crime was carried

---

[12] Mr. Edwards declined to testify against his co-defendants for fear that his family would be retaliated against. Exh. A, p. 55. The analysis in the case of *In re Scott* (2004), 119 Cal.App.4th 871, 890, is instructive here. In *Scott*, the Court noted the plea offer for manslaughter which was offered to the defendant. As the court put it, "it is impossible to imagine prosecuting authorities would have made such an offer if they believed they could show Scott acted 'in a dispassionate and calculated manner, such as in an execution style murder." *Id.* The Court placed great importance on the fact that a pretrial offer was made, thereby precluding the Board or DA from characterizing the offense as something greater. Similarly, here, an offer was made by the DA to Mr. Edwards for a non-premeditated, and deliberated murder. Thus, the Board cannot categorize this crime as an especially heinous, atrocious and egregious crime. If it were of such a caliber, then the DA never would have made an offer for manslaughter.

[sic] in a calculated manner." Exh. A, p. 68. The superior court, in its denial, agreed. Exh. E, p. 313. Both the Board and Governor are known for *always* categorizing crimes as "especially callous," "calculated" and "cruel" in order to deny parole even in the most mitigated of cases. Thus, the meaning is lost, as it has been overused and abused as a means of denying parole. As found by the California District court the Board and Governor are consistently holding that a crime was cold or calculating, thus especially heinous under the regulations because there was a murder committed with a gun. *In re Gray, supra*, 151 Cal.App.4th at 405. It is clear that because the state courts now *never* ask for a comparison of like crimes in order to substantiate such findings, the Board and Governor are unrestricted in denying parole. See *Dannenberg, supra,* 34 Cal.4th at 1098.

The Board, and subsequently, the state courts, violated Petitioner's due process rights by relying on unconstitutionally vague terms in order to deny parole. As presented in *Rosenkrantz V*, "the nature of the prisoner's offense, alone, *can* constitute a sufficient basis for denying parole." *Rosenkrantz V*, 29 Cal.4th at 682 (emphasis added). The *Rosenkrantz V* decision employed conditional language that the offense can constitute such a basis, if the crime could reasonably be considered *more* aggravated or violent than the minimum necessary to sustain a conviction for that offense. *Id.* at 683, (emphasis added). Although the *Rosenkrantz V* language is itself arguably unconstitutionally vague, the California Supreme Court, in that decision, at least did state a clear directive that sole reliance on the commitment offense will violate the prisoners' due process rights pursuant to *Penal Code* § 3041(a) in situations where the offense "could [not] be considered *more* aggravated or violent than the minimum necessary to sustain a conviction for that offense." *Rosenkrantz V, supra*, 29 Cal.4th at 683. However, the subsequent *Dannenberg* decision, also rendered by the California Supreme Court, further muddied the waters by changing the standard set forth in *Rosenkrantz V*, allowing the Board to deny parole based on the commitment offense if the inmate's crime was "more than minimally necessary to convict him of the offense for which he is confined." *Dannenberg, supra,* 34 Cal.4th at 1095. As noted by the dissent in *Dannenberg*, this standard is *completely* unreviewable. *Id.* at 1102, (emphasis added). The result is a definition, or standard, like the Greek god Proteus, which constantly changes shape, is never consistent and is incapable of being defined or pinned down. What may be callous or heinous to one Board (or Governor) member may not be such to another.

14

As presented in *Dannenberg,* every murder could fit into the category of "more than minimally necessary to convict" by virtue of the fact that the application is so arbitrary and depends on the subjective and personal opinions of the Board members. As such, the Board and Governor have fully exploited and abused this carte blanche language to repeatedly deny parole based **solely** on the nature of the commitment offense, by effectively deeming all crimes exceptionally "heinous, atrocious, cruel, or dispassionate. As will be seen, this has been done to deny improperly Mr. Edwards.

### STATEMENT OF THE CASE

### I.

Petitioner Willie Edwards is currently confined at California Correctional Training Facility and State Prison in Soledad, California, part of the State of California Department of Corrections & Rehabilitation, in the custody of Acting Warden Ben Curry, pursuant to the judgment of the Superior Court for the County of Los Angeles, Case. No. A-977397. Exh. A, p. 86. Real Parties in Interest, Board of Parole Hearings and Governor Arnold Schwarzenegger, are charged with the duty under *Penal Code* §3041 to set and administer parole dates for inmates, and the Board is the entity that has unlawfully failed and refused to set a proper release date for Mr. Edwards. Mr. Edwards takes full responsibility for his actions, and concedes the validity of his conviction, but contends that his term has not been timely fixed in the manner as prescribed by law: *Penal Code* § 3041, *California Code of Regulations* [*Cal. Code Regs.*,] Title 15 §§2400 *et seq.*; *In re Ramirez, supra,* 94 Cal.App.4th 549; *McQuillion v. Duncan* [*McQuillion* I] 306 F.3d 895, 902-903 (9th Cir. 2002); *Biggs v. Terhune, supra,* 334 F. 3d at 915-916.

### II.

Mr. Edwards was convicted of second degree accomplice murder, after declining a plea for manslaughter in exchange for testimony against co-defendants.[13] He was sentenced to

---

[13] Mr. Edwards declined to testify against his co-defendants for fear that his family would be retaliated against. Exh. A, p. 55. The analysis in the case of *In re Scott,* 119 Cal.App.4th 871, 890 (2004), is instructive here. In *Scott,* the Court noted the plea offer for manslaughter which was offered to the defendant. As the court put it, "it is impossible to imagine prosecuting authorities would have made such an offer if they believed they could show Scott acted 'in a dispassionate and calculated manner, such as in an execution style murder." *Id.* The Court placed great importance on the fact that a pretrial offer was made, thereby precluding the Board or DA from characterizing the offense as something greater. Similarly, here, an offer was made by the DA to Mr. Edwards for a non-premeditated, and deliberated murder. Thus, the Board cannot categorize this crime as an especially heinous, atrocious and egregious crime. If it were of such a caliber, then the DA never would have made an offer for manslaughter.

seventeen years-to-life, with his receipt into the CDCR dated May 31, 1990. Exh. B, p. 80.

### III.

Mr. Edwards' minimum eligible parole date is April 22, 2000. Exh. B, p. 80. In March of 1999, the Board conducted an initial Parole Consideration Hearing at the conclusion of which it recommended that Mr. Edwards become discipline free, upgrade vocationally and educationally, and participate in self-help and available therapy. Exh. B, p. 119. In April of 2003, Mr. Edwards attended his first subsequent parole hearing and the Board had before it evidence of his compliance with the Board's 1999 suggestions, including remaining discipline free, upgrading vocationally, taking Computer Repair, participating in self-help programs and undertaking academic coursework and yet Mr. Edwards was denied a parole date. *Id.*

### IV.

On September 29, 2005, Mr. Edwards attended his second subsequent (third overall) parole consideration hearing. At that hearing the Board baselessly alleged, for the third consecutive time, that Mr. Edwards "would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." Exh. A, p. 68. The Board again relied on the immutable factors surrounding the commitment offense to deny his parole, reciting constitutionally vague and inapplicable terms to categorize the offense. For instance, despite being convicted of second degree accomplice murder, the Board supported their denial by stating that the "crime was carried *[sic]* in a calculated manner." Exh. A, p. 68. As will be discussed more fully *infra*, such "calculated" language actually comes from *Cal. Code Regs*, tit. 15 § §2402(c)(1)(B), which requires a finding that the "offense was carried out in a dispassionate and calculated manner, ***such as an execution style murder.***" Emphasis added. Exh. H. As recently explained by the California court of appeal in *In re Gray*, "In rejecting the Board's conclusion that the murder was dispassionate and calculating to make it especially heinous under the Regulations, the *Weider* court explained: "The Board's finding that the crime was 'dispassionate' and 'calculated' does not conform to the appropriate standard, either. The finding was based upon evidence that Weider 'took a weapon into a bar, into a public place.' But in deciding whether the crime was particularly heinous, atrocious, or cruel, the Board is to consider whether '[t]he offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.' § 2402, subd. (c)(1)(B). The murder the Board describes is not at all like an execution-style murder. The

fatal wound was delivered during the struggle over the gun. *And there was no evidence that Weider conducted himself dispassionately. To the contrary, the evidence shows that he was angry or distraught.*" *In re Gray, supra,* 151 Cal.App.4[th] at 406-07, citing *Weider, supra,* 145 Cal.App.4th at pp. 587-588, 52 Cal.Rptr.3d 147, italics added.

Here, not only was Mr. Edwards never charged, let alone convicted of first degree murder, but he was actually offered a plea for manslaughter.  Thus, there is absolutely no evidence that the crime was an execution style murder and, given that Mr. Edwards was offered a plea for manslaughter, the Board, and the District Attorney, are precluded from relying on such allegations to support the denial. *In re Scott, supra,* 119 Cal.App.4[th] 871.  The Board further relied on Mr. Edwards' one (1) Administrative CDC-115 that he received in 2004 for possession of a cooking utensil in his cell and three (3) minor 128(a) counseling chronos also occurring during the observation period in question.[14]  However, the Board failed to relate these incidents to the allegation that Mr. Edwards *would pose a current danger* if released.  Despite the Board's explicit recognition that Mr. Edwards has no psychological impediments to parole, that he has programmed extensively, and that his parole plans are solid, the Board issued a wholly *unwarranted four (4) year denial. See* Exh. A, pp. 72-77.  Thus, the Board's "findings" in 2005 are at odds with the unrefuted and indisputably positive psychological reports on file, Mr. Edwards' record of achievement and the 2005 Board's own findings.  Given this paradox, the only rational explanation is that the Board's 2005 hearing was a sham.  That hearing is the subject of this petition.

### STATEMENT OF FACTS

### V.

Petitioner has prepared a detailed Statement of Facts in the accompanying Memorandum of Points & Authorities, and the same is incorporated herein by reference as though set forth in full.  That statement outlines the factual details of Mr. Edwards's third parole hearing that occurred on September 29, 2005, the circumstances of the commitment offense, and provides a detailed chronology of Mr. Edwards' outstanding programming while incarcerated, his participation in numerous programs denoting substantial vocational, educational, and spiritual

---

[14] As held in *In re Mark Smith,* 128(a)s are not considered disciplines for purposes of determining parole eligibility. *In re Mark Smith,* 109 Cal.App.4[th] 489 (2003).

growth, and his remaining violence free throughout his entire incarceration.   In addition, the statement briefly outlines his three (3) parole hearings, his psychological history as denoted by the opinions of the State's own mental health and correctional experts, and describes in detail his extensive parole plans. As will be discussed at length in the attached Points and Authorities, the hearings have become a *pro forma* procedure in contradiction to the requirements of state statutes, regulations, and in violation of Constitutional Due Process, under the state and federal Constitutions.  The Court's attention is directed to the attached Points and Authorities for a full understanding of the background of this matter.

## VI.

The commitment offense occurred on September 19, 1988 at 2:40 in the morning in Los Angeles. Exh. D, p. 280. Petitioner accompanied his two co-defendants to an area where two groups of young men were congregating; Petitioner was a member of neither group. Exh. D, p. 287; Exh. E, p. 313.  Petitioner, familiar with some of the men from playing basketball, was sucked into mediating a dispute between the two groups. As Petitioner walked between the two groups, a gun shot was fired. Exh. B, p. 100-101. At this point, everyone, including Petitioner, began shooting; Mr. Edwards did not aim to hit anyone. Exh. D, p. 287. At the conclusion of the fire, Mr. Hicks was dead, having sustained wounds consistent with an AK-47 rifle. Exh. E, p. 313. Mr. Edwards was in possession of a nine millimeter hand gun. His co-defendants were in possession of an AK-47 and a hand gun. *Id.* At trial, fearing for the safety of his family, Mr. Edwards declined a plea offer for manslaughter in exchange for testifying against his co-defendants and was convicted of second degree accomplice murder. Exh. D, p. 287.

## VII.

At the 2005 hearing, the Board had before it a 2005 psychological evaluation prepared by Dr. Macomber, a CDCR psychologist. Exh. B, pp. 99-103. In the report, Dr. Macomber concluded that Mr. Edwards fully acknowledges his contribution to the victim's death and that his feelings of remorse and regret are sincere. Exh. B, p. 102. Dr. Macomber found that Mr. Edwards has a Global Assessment Functioning (GAF) score of 90, which indicates that Mr. Edwards can function highly in all areas and is socially effective with no symptoms of

18

problems.[15] *Id.* at p. 100. He further concluded that Mr. Edwards does not have a mental health disorder, has good vocational skills and strong familial and community support and that his "prognosis for successful adjustment in the community is excellent." *Id.* at p. 103. Dr. Macomber determined that if paroled to the community, Mr. Edwards' violence potential would be comparable to that of an average citizen. *Id.* at p. 102. In addition, Mr. Edwards has remained in general population with Medium A custody, with the lowest possible security score.[16] Exh. B, p. 113, 116-117.

In the nineteen (19) years following the commitment offense, Mr. Edwards has never received a violence related disciplinary action and has never been involved in any gang activity. This is evidenced by Dr. Macomber's commentary: "Inmate Edwards has several minor disciplinaries. These disciplinaries ***do not indicate*** a potential for dangerous behavior. There is no evidence of possession of weapons, participation in riots, drug trafficking, or other dangerous behavior. His last disciplinary was possession of a cooking utensil that he used to cook food with in his cell." Exh. B at 102.

## VIII.

Despite every indication that Mr. Edwards is indisputably suitable for parole, the 2005 Board refused to set a release date consistent with the mandates of *Cal. Penal Code* §3041. Thus, Mr. Edwards is currently illegally confined because his term has in effect been converted to the maximum term of life without parole by the Board, having entered into the matrix for the most egregious second degree murders and with good time credit, has entered into the matrix for premeditated, deliberated first-degree murder.[17] The setting of a term for Mr. Edwards presents little problem under the Matrix of (Uniform) Base Terms. The applicable categories are Victim Category I (Participating Victim) and Circumstance Category A (Indirect Cause) apply, making

---

[15] DSM IV describes a GAF of 90 as "[a]bsent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members).

[16] The CDCR's "classification score" is a measure of the security risk attributed to a prisoner by the CDCR. Every prisoner is received into the CDCR with a score determined by offense and certain other statistics and then is either raised or lowered depending upon the prisoner's incarceration history. The lowest and most favorable classification was previously zero (0), and now is nineteen (19.)

[17] In *In re Rodriguez*, 14 Cal.3d 639 (1975), the Court stated held that when the Board fails to set a term at a prisoner's parole consideration hearing, the term shall be deemed to have been fixed at its maximum. Therefore, for these proceedings, Petitioner's term has in effect been fixed at the rest of his natural life, i.e. Life Without the Possibility of Parole (LWOP).

19

the uniform term 15-16-17 years before post conviction custody credits under *Cal. Code Regs.*, tit. 15 § 2410.[18]  Attributing custody credits under *Cal. Code Regs., tit. 15* § 2410 of four (4) months per year for thirteen (13) of the over nineteen (19) years he has been incarcerated, he has accrued an additional four (4) years of credit, thus his term of incarceration, with good time credits is over twenty three (23) years.  Under the Matrix, the maximum term is seventeen (17) years before the § 2410 reduction.  As a result, he has now served more than six (6) years *over* the equivalent of the high end of his uniform term established by the matrix for his crime.  Further, Mr. Edwards' term of imprisonment has almost exceeded the maximum aggravated base term for the most heinous *second-degree murders* prescribed under the Matrix, and with credit has entered the Matrix for first degree, premeditated, deliberated murder even though he was only convicted of second degree accomplice murder.  *See Cal. Code Regs*, tit. 15, §2403(c).

### *LEGAL ARGUMENT*

### IX.

The Board violated Mr. Edwards's due process rights by failing to find him suitable for parole and granting him a release date, thus depriving him of a liberty interest.  The Fifth and Fourteenth Amendments prohibit the government from depriving an inmate of life, liberty or property without due process of law.  U.S. Const. Amends. V, XIV.  Under California's statutory scheme, in *Penal Code* section 3041, the Board *shall* set a parole release date, *unless* it concludes the inmate is currently an unreasonable risk to the public if released.  *Penal Code* § 3041.  Accordingly, this statute is considered mandatory for constitutional purposes.  *McQuillion I, supra*, 306 F.3d at 901-902; *Biggs v. Terhune, supra*, 334 F.3d at p. 914; *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1127-1128 (9th Cir. 2006).  Because of the mandatory language, a constitutionally protected liberty interest is created in parole for every inmate.  *Id.*  An inmate is deprived of that interest when the Board, as in this case, arbitrarily determines the inmate is an unreasonable risk and therefore is unsuitable for parole.  To determine whether an inmate is unsuitable for parole the Legislature has comprised a series of suitability factors.  *Cal. Code Regs.*,

---

[18] The matrix is established under Title 15 of the *California Code of Regulations* § 2403(c), and sets a term based on the circumstances of the killing and the role of the victim, which term is then reduced by post conviction credits at the rate of 4 months for each 12 months served free of CDC-115's, under *Cal. Code Regs.*, tit. 15 § 2410. Under these rules, the maximum matrix time for Mr. Edwards falls within a range of 15, 16, or 17 years, which is then reduced by the 25% credits under § 2410.

*tit.* 15 § 2402. The accompanying Points and Authorities explain in detail why Mr. Edwards does not fit into any of the unsuitability factors listed and does satisfy each of the factors that tend to show suitability. The Board here has, by its "findings," attempted to re-label the crime as a parole ineligible first-degree murder and substituted its own verdict of first degree murder in place of the jury's verdict of second degree murder. ***The Board's allegations are not supported by any evidence, and thus, do not support failure to provide future release date and definitely do not support a four (4) year denial.*** Therefore, the Board's determination that Mr. Edwards was unsuitable for parole and would not be potentially suitable for another four (4) years was an arbitrary decision that unconstitutionally deprived him of his liberty interest, a parole release date.

## *DUE PROCESS VIOLATION*

### X.

In addition to the unavoidable logical consequence that the continued denial of a parole release date based on the immutable commitment offense itself is an impermissible conversion of Mr. Edwards's parole-eligible sentence into a sentence of life without the possibility of parole, the Board's position is also in violation of the statutes and regulations which set out the factors that the Board must consider in determining parole suitability. *Penal Code* § 3041, *et seq.; Cal. Code Regs., tit.* 15 § 2400, *et seq.* As the court in *Biggs* found, if an inmate "continue[s] to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole." *Biggs v. Terhune, supra,* 334 F.3d at p. 910. As recently pointed out by the California Court Appeals, First District, "[r]eliance on such an immutable factor 'without regard to or consideration of subsequent circumstances' may be unfair." *Scott II, supra,* 133 Cal.App.4th 573, 594 [citing *In re Smith,* 114 Cal.App.4th 343, 372 (2003)]. These concepts have now been carried forward into both the federal and state courts. *Rosenkrantz VI, supra,* 444 F. Supp.2d 1063; *Sanchez v. Kane, supra,* 444 F.Supp.2d 1049; *Thomas v. Brown, supra,* ___F.Supp.___[2006 WL 3783555] *3, *Brown v. Kane, supra,* ___ F.Supp.2nd ___ [2007 WL 1288448] slip opn., p. 6; *Blankenship v. Kane, supra,* ____F.Supp.___[2007 WL 1113798],; *Martin v. Marshall, supra,* 431 F.Supp.2d 1038; *In re Lee, supra,* 143 Cal.App.4th 1400, at 1408-1409 [req. for depubl. denied at S149411]; *In re Elkins, supra,* 144 Cal.App.4th 475, at 499 and 521 [pet'n for rev. & req. for depubl.

21

denied at S148058; applic. for stay denied, at S147840], *In re Barker, supra*, 151 Cal.App.4th, 346, 365; *In re Weider, supra*, 145 Cal.App.4th 570, at 589-590; *In re Gray, supra*, 151 Cal.App.4th 379, 383 [depubl. request denied at S153831]; Here, the Board's denial of parole based on the unchangeable commitment offense requires "especially close scrutiny." *Scott II, supra*, 133 Cal.App.4th at 594.    The facts of the commitment offense, although admittedly tragic, are insufficient to justify a finding of unsuitability, and the failure to set a parole release date, violates due process within the meaning of *Biggs and Irons*: "...[I]ndefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." *Irons II, supra*, 479 F.3d at 665 (citing *Biggs v. Terhune*, 334 F.3d 910, 917 (9th Cir. 2003).

## XI.

The commitment offense can only be used to determine unsuitability if the crime was "especially heinous, atrocious or cruel." *Cal. Code Regs., tit.* 15 § 2402, subd. (c). However, these terms, as applied, are wholly vague and ambiguous.    As a result, unsuitability determinations are made arbitrarily with no cognizable standard.    A statute or regulation is void if its terms are vague, and as such, do not give adequate notice to people of ordinary intelligence concerning the conduct it involves or leads to arbitrary enforcement.    *United States v. Doremus*, 888 F.2d 630, 634 (9th Cir. 1989).    The United States Supreme Court has held, with death penalty statutes, the phrase "especially heinous, atrocious or cruel" is unconstitutionally vague. *Maynard v. Cartwright*, 486 U.S. 356, 364-365 (1988).    Because continued reliance on the commitment offense to deny parole transforms an indeterminate sentence into life without the possibility of parole, the same vagueness standards should apply to parole hearings.    See *Superior Court of Santa Clara County v. Engert*, 31 Cal.3d 797, 800 (1982) [holding that virtually identical language was unconstitutionally vague for purposes of both imposing a death sentence or a sentence of life without the possibility of parole.]

## XII.

Accordingly, §2402 also has factors listed that tend to show the commitment offense was especially heinous, atrocious or cruel. *Cal. Code Regs., tit.* 15 § 2402, subd. (c)(a)(A)-(E.). However, these factors also use terms such as "exceptionally callous disregard for human

22

suffering" and "inexplicable motive," which, as applied by the Board, are unconstitutionally vague. *Id.* Unfortunately, rather than truly trying to determine whether the crime was actually egregious enough to justify an unsuitability determination over seventeen (17)[19] years after the commitment offense, the Board simply quotes a couple of key phrases from § 2402 with no explanation why the commitment offense is particularly egregious, or factually fits into those factors.[20] The Board is using the findings it makes under this unconstitutionally vague language of § 2402 to justify unsuitability determinations, even though no support is given to explain why the commitment offense is a reliable predictor of the inmate's current dangerousness. Mr. Edwards's case is no exception. The Board characterized the crime as "carried out in a calculated manner," "carried in a manner which was [sic] demonstrates an exceptionally callous disregard to human suffering," "the motive for the crime was very trivial," "the offense was committed in an especially cruel manner." Exh. A, pp. 68;72-73. However, the Board misapplied these terms, as the facts do not meet the regulatory requirements. Further, the Board did not explain these characterizations. Instead, it relied upon the wholly vague terms from § 2402 and a brief description of the crime to once again deny Mr. Edwards's parole, for a third time, based upon the offense and not his current dangerousness to the public.

## XIII.

Petitioner has no other plain, speedy or adequate remedy in the ordinary course of the law. This petition is addressed to this Court's original habeas corpus jurisdiction because the issues raised are of constitutional dimension, questioning the legality of the Petitioner's confinement, where administrative remedies are not practical or any longer available. On May 1, 2004, the BPT repealed the requirement that prisoners and parolees file administrative appeals concerning Board actions and decisions. *See Cal. Code Regs.,* tit. 15, §§ 2050-2056. Thus, there is no longer an administrative remedy in existence. Prior to filing this petition, Mr. Edwards filed a petition for writ of habeas corpus in the Los Angeles County Superior Court which was denied on September 5, 2007. A true and accurate copy of said denial is attached hereto as exhibit E. Mr. Edwards then filed a petition for writ of habeas corpus in the California Court of Appeal, Second Appellate District on November 30, 2007. That petition was denied on

---

[19] Mr. Edwards has been incarcerated for over nineteen (19) years.

[20] The allegations made by the Board regarding the facts of the crime are not supported by the evidence.

December 13, 2007.  A true and accurate copy of said denial is attached hereto as exhibit F.  A timely petition for review was then filed in the California Supreme Court alleging the same issues raised herein, resulting in the previously mentioned denial on February 27, 2008.  A true and accurate copy of said denial is attached hereto as exhibit G.  Thus, this matter is ripe for review.

## SUPPORTING EXHIBITS
### XIV.

Petitioner has concurrently lodged an appendix with this Court containing the documents supporting this petition and the same are incorporated herein by reference as though set forth in full.

### *PRAYER FOR RELIEF*

WHEREFORE, Petitioner prays this Court to do the following:

1.    Issue a writ of habeas corpus or order to show cause to the Warden, Governor and the Board of Parole Hearings to inquire into the legality of the Petitioner's incarceration;

2.    Order the Board to set a release date commensurate with the matrix defined for the circumstances of Petitioner's offense, or alternatively, order the Board to hold a new parole hearing within forty five (45) days, and if no new information is presented that establishes that Petitioner poses a present threat of future violence, to find Petitioner suitable for parole and set a release date;

3.    Conduct an evidentiary hearing if necessary to resolve any disputed factual issues, allow oral argument regarding the issues set forth herein, and after the hearing, issue an order directing the Board to act as set forth in paragraph 2, above;

4.    Allow Petitioner the opportunity to orally argue in support of petition;

5.    Grant a discharge free and clear of parole; and

6.    Grant such other and further relief as justice may require.

Dated: 4/8/08                               Respectfully submitted,

                                            LAW OFFICES OF TRACI S. MASON

                                            By:_____
                                               TRACI S. MASON
                                               Attorney for Petitioner,
                                               WILLIE EDWARDS

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VERIFICATION

I am the attorney for Petitioner in the above-entitled matter, and my practice is located in Santa Clara County.   Petitioner, Willie Edwards is currently in custody in Monterey County. Additionally, I am personally familiar with the facts and circumstances underlying the present Petition, and for these reasons, am providing this Verification in accordance with the Code of Civil Procedure §446.  I have read the foregoing Petition for Writ of Habeas Corpus and know the contents thereof.  The same is true of my own personal knowledge, except as to those matters stated upon my information and belief, and as to those matters I believe them to be true.

I declare under of perjury that the foregoing is true and correct, executed this 8th day of April 2008, in the City of San Jose, County of Santa Clara, State of California.

TRACI S. MASON

26