# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILLIE EDWARDS,

      Petitioner,

        -vs-

BEN CURRY, Acting Warden,

      Respondent.

      On Habeas Corpus.

_____/

ARNOLD SCHWARZENEGGER,
Governor, BOARD OF PAROLE
HEARINGS,

      Real Parties in Interest.

_____/

Case No. C-08-1923 CW

---

## *TRAVERSE TO RESPONDENT'S RETURN TO ORDER TO SHOW CAUSE RE PETITION FOR WRIT OF HABEAS CORPUS*

---

TRACI S. MASON
SBN 237663
LAW OFFICE OF TRACI S. MASON
45 E. Julian Street
San Jose CA 95112
(408) 286-2808

Attorneys for Petitioner,
WILLIE EDWARDS

## TABLE OF CONTENTS

TABLE OF CONTENTS ……………………………………………………...............i

TABLE OF AUTHORITIES……………………………………………………........ii

INTRODUCTION……………………………………………………….................1

TRAVERSE TO RESPONDENT'S RETURN ……………………………...............3

REMEDY………………………………………………………………...............18

PRAYER………………………………………….......................................19

## Federal Cases

Board of Pardons v. Allen (1987) 482 U.S. 369 ............................................................... 7
Greenholtz v. Nebraska Penal Inmates 442 U.S. 1 (1979) ............................................... 9
Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1 (1979.) .......................................... 7, 9
In re Lawrence and Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003) ....................... passim
In re Lawrence__Cal.Rptr.3d__2008 WL 3863606 ..................................................... passim
Irons v. Carey,  479 F.3d 658 (9th Cir 2007) ..................................................... 4, 7, 8, 10
Irons v. Carey, 505 F.3d 846 (9th Cir. 2007) ............................................................ passim
Marbury v. Madison, 5 U.S. (1 Cranch) 137, 161 (1803) ................................................ 20
Martin v. Marshall, 431 F.Supp.2d 1038 (N.D. Cal. 2006) ............................................... 4
McQuillion v. Duncan, 306 F.3d 895 (9th Cir. 2002.) ........................................ 7, 8, 9, 10
Panetti v. Quarterman, ___ U.S.___, 127 S.Ct. 2842 (2007) .......................................... 8
Roper v. Simmons, 543 U.S. 551 (2005) ......................................................................... 18
Rosenkrantz v. Marshall  [Rosenkrantz VI]  444 F.Supp.2d 1063, at 1085 (C.D. Cal. 2006) ... 4, 9
Rosenkrantz VI] , 444 F.Supp.2d 1063, at 1085 (C.D. Cal. 2006) ..................................... 4
Sanchez v. Kane, 444 F.Supp.2d 1049 (N.D. Cal. 2006) ................................................... 4
Sandin v. Conner, 515 U.S. 472 (1995) ............................................................................. 7
Sass v. Calif. Bd. Of Prison Terms, 461 F.3d 1123 (9th Cir. 2006) ......................... 7, 8, 9, 10
Superintendent v. Hill, 472 U.S. 445 (1985) ............................................................... 8, 10

## State Cases

In re Elkins, 144 Cal.App.4th 475 (2006) .......................................................................... 4
In re Jackson, 39 Cal. 3d 464 (1985) ............................................................................... 10
In re Lee, 143 Cal.App.4th 1400 (2006) ............................................................................ 4
In re Mark Smith, 109 Cal.App.4th  489, (2003) ............................................................. 15
In re Ramirez, 94 Cal.App.4th 549 (2001) .................................................................. 9, 20
In re Roberts, 36 Cal. 4th 575,  589 (2005) ....................................................................... 5
In re Rodriguez (1975) 14 Cal.3d 639 ............................................................................. 14
In re Rosenkrantz [Rosenkrantz II], 80 Cal. App. 4th 409 (2000) .................................... 20
In re Rosenkrantz (2002) formerly published at 95 Cal.App.4th 358 ................................. 4
In re Scott [Scott II] , 133 Cal.App.4th 573, at 594 (2006) ............................................... 4
In re Sena, 94 Cal. App. 4th 836, at 839 (2003) ................................................................ 5
In re Weider, 145 Cal.App.4th 570 (2006) ......................................................................... 4
People v. Rosenkrantz  (1988) 198 Cal.App.3d 1187 .......................................................... 4
In re Rosenkrantz, 29 Cal.4th 616 (2002) .......................................................... 4, 9, 11, 15
In re Scott I, supra, 119 Cal.App.4th 871 ........................................................................ 13

## Statutes

28 U.S.C. § 2254(d) ............................................................................................................ 6
Penal Code § 3041 .............................................................................................................. 7

State Regulations

Cal. Code Regs., tit. 15 §2410 ................................................................. 15
Title 15 of the California Code of Regulations § 2403(c) ........................................ 15

TRACI S. MASON
SBN 237663
LAW OFFICE OF TRACI S. MASON
45 E. Julian Street
San Jose CA 95112
(408) 286-2808

Attorneys for Petitioner,
WILLIE EDWARDS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILLIE EDWARDS,                              08-1923 CW

    Petitioner,                          ***TRAVERSE TO RESPONDENT'S
                                   RETURN TO ORDER TO SHOW***
      -vs-                           ***CAUSE RE PETITION FOR WRIT
                                    OF HABEAS CORPUS***

BEN CURRY, Acting Warden,

    Respondent.

    On Habeas Corpus.
_____/
ARNOLD SCHWARZENEGGER,
Governor, BOARD OF PAROLE
HEARINGS,

    Real Parties in Interest.
_____/

    Petitioner, Willie Edwards, respectfully submits the following traverse to the Respondent's Return in the above-entitled case. In support thereof, Mr. Edwards admits, denies, and alleges as follows:

### INTRODUCTION

    This case arises out of Mr. Edwards' ***third*** parole denial by the Board in the face of a period of incarceration that has now entered a term for the most egregious second degree murders, even though Mr. Edwards was not the actual killer, *he was a mere nineteen (19) years old at the time of the commitment offense*, and, more importantly, in the face of clear evidence of

1

suitability.  Mr. Edwards was convicted of second degree accomplice murder with use of a firearm.  By all accounts, including those of the California Department of Corrections and Rehabilitation's (hereinafter "CDCR") own expert psychologists, Mr. Edwards currently poses absolutely *no* threat to public safety. A fact acknowledged by the Board.  (Exh. A, p. 71.)[1] He has never exhibited behavior indicative of violence potential,[2] has taken full advantage of rehabilitative programming offered by the CDCR, has painstakingly sought out spiritual growth through Christianity and intellectual growth through college study.  He has received several psychological evaluations over the years, each concluding that Mr. Edwards does not suffer from any mental disorders and that if released, would pose *no more danger to society than the average citizen on the streets*. Exh. B, pp. 99-111.   As recently made clear by the California Supreme Court in *In re Lawrence*, the focal issue and determining factor at suitability hearings is *current* dangerousness.  *In re Lawrence*__Cal.Rptr.3d__ 2008 WL 3863606, p. 23 (2008).  The Court explained that the inquiry must take into consideration the prisoner's maturity, programming and mental state in determining current dangerousness.  *Id.* at p. 22.  The Court stressed that "it is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." *Id.* at p. 17.    Here, there is nothing in Mr. Edwards' demeanor, mental state or programming that supports a finding that he would pose a risk of *current* danger if released.  Moreover, there is absolutely no evidence to support the wholly *unjustified four (4)* year denial that the Board imposed.

In short, Mr. Edwards' age at the time of the commitment offense, his positive programming, clear rehabilitation and full psychological clearance provides ample evidence that Mr. Edwards is prepared to reenter society and become a productive and positive member. The finding of current dangerousness made by the Board regarding Petitioner has no factual basis.  The California Supreme Court in *In re Lawrence* stressed the fact that the statute demands a standard of current dangerousness that is supported by "some *evidence*, not merely by a hunch or intuition." *In re Lawrence*, *supra*, Cal.Rptr.3d__ 2008 WL 3863606 at p. 17, emphasis in

---

[1] Unless otherwise noted, all referenced exhibits are to those Petitioner submitted with the original Petition and Points & Authorities.

[2] In the 2005 psychological evaluation, Dr. Macomber addressed Mr. Edward's disciplinary history: "Inmate Edwards has several minor disciplinaries.  These disciplinaries *do not indicate* a potential for dangerous behavior.  There is no evidence of possession of weapons, participation in riots, drug trafficking, or other dangerous behavior. His last disciplinary was possession of a cooking utensil that he used to cook food with in his cell." Exh. B at 102.

original.)  At Mr. Edwards' 2005 hearing, the Board, in the face of full psychological clearance and evidence of sincere remorse stated, "yeah I just—I just—I don't doubt your sincerity and I know you've accomplished a lot since you've been here, but I just couldn't get a handle on how you made that leap.  How that change has come about.  I could not measure any remorse or insight, or at least the level enough to give you the benefit of the doubt and—and I can only assume that you might need some more therapy and self-help so that you reckon with what you got in prison.  I know you want us just to focus on what you've been doing in prison, but we cannot do that.  You know can't do that, we cannot ignore the crime." Exh. A, p 74.     Under the recent analysis and application of the rule explained in *In re Lawrence* and *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003), as applied in cases such as *Irons v. Carey*,  479 F.3d 658 (9th Cir 2007), *Sanchez v. Kane*, 444 F.Supp.2d 1049 (N.D. Cal. 2006), *Rosenkrantz v. Marshall* [*Rosenkrantz VI*][3] 444 F.Supp.2d 1063, at 1085 (C.D. Cal. 2006),  *Martin v. Marshall*, 431 F.Supp.2d 1038 (N.D. Cal. 2006), and *In re Scott* [*Scott II*][4], 133 Cal.App.4th 573, at 594-595 (2006), *In re Lee*, 143 Cal.App.4th 1400 (2006), *In re Elkins*, 144 Cal.App.4th 475 (2006), and *In re Weider*, 145 Cal.App.4th 570 (2006), Mr. Edwards is clearly entitled to relief.

### *TRAVERSE TO RESPONDENT'S RETURN*

### I.

Petitioner admits the portions of the allegations of paragraph 1 regarding his alleged conviction, and acknowledges that he is in the actual custody of the California Department of Corrections and Rehabilitation (CDCR)[5] at the Correctional Training Facility-Soledad. However, Petitioner denies generally and specifically the remaining allegations that he is currently "lawfully" or properly in the custody of the CDCR, for the reasons alleged in the petition and herein.  Petitioner is in fact challenging the manner in which his sentence has been executed, to the extent that the Board wrongfully denied him parole. See *In re Roberts*, 36 Cal. 4th 575, 589-

---

[3] The *Rosenkrantz* case has now resulted in six decisions.  *People v. Rosenkrantz*  (1988) 198 Cal.App.3d 1187 (*Rosenkrantz I*)   *In re Rosenkrantz* (2000) 80 Cal.App.4th 409, (*Rosenkrantz II*) *Davis v. Superior Court* [*Rosenkrantz III*] (Feb. 22, 2001, B146421) [non pub. opn.] (*Rosenkrantz III*) *In re Rosenkrantz* (2002) formerly published at 95 Cal.App.4th 358  (*Rosenkrantz IV*), *In re Rosenkrantz*, (2002) 29 Cal.4th 616  (*Rosenkrantz V*), and *Rosenkrantz v. Marshall* (C.D.Cal. 2006) 444 F.Supp.2d 1063 (*Rosenkrantz VI*).

[4] There are two "*Scott*" decisions.  The first was the reversal of the Board's denial of parole, *In re Scott* [*Scott I*] (2004) 119 Cal.App.4th 871.  The second was the reversal of the Governor's action taking Scott's parole date granted at the hearing after the decision in *Scott I*.  *In re Scott* [*Scott II*] (2005) 133 Cal. App.4th 573 .  They will be differentiated herein by the roman numeral designations I & II.

[5]  The former CDC is now the CDCR, California Department of Corrections & Rehabilitation.

590 (2005) [treating parole as an integral part of the overall process of sentencing]; see also *In re Sena*, 94 Cal. App. 4th 836, at 839 (2003). Thus, it is the effect of the Board's actions on the execution of the sentence, rather than the initial imposition, that is at issue herein. Petitioner denies all remaining allegations.

## II.

Petitioner admits in part the allegations in paragraph 2, inasmuch as Petitioner filed a petition for writ of habeas corpus in the Los Angeles Superior Court, which raised the same claims as those brought before this Court. Petitioner further admits in part the allegations in paragraph 2, inasmuch as the paragraph contains the purported "decision" of the Superior Court of Los Angeles. However it is generally and specifically denied that the decision is correct or that any of the "determinations" made by the Los Angeles Superior Court possess merit. It is affirmatively alleged that the court's decision blindly relies on the Board's findings and Petitioner specifically denies the allegation that the court made any factually based determinations. It is affirmatively alleged that the Los Angeles County Superior Court's decision failed to reflect the focus on *current* dangerousness and instead summarily stated that "some evidence" existed to support the Board's finding that the commitment offense was carried out in a calculated and dispassionate manner. Exh. E, pp. 313-314. It is further affirmatively alleged that the superior court's allegations that the crime was "calculated" and "dispassionate" and that Mr. Edwards' pre-prison arrest provide any support to a finding of *current* dangerousness. Exh. E, p. 313. As held by the California Supreme Court in *In re Lawrence*, "the crime does not in and of itself provide some evidence of *current* dangerousness to the public" unless there is something else in the record regarding the prisoner's dangerousness that supports the probative determination of the commitment offense. *In re Lawrence*, *supra*, ___Cal.Rptr.3d___ 2008 WL 3863606 at p. 18, emphasis in the original. Here, the court in no way provided a nexus between the allegations and the record to support the conclusion that Mr. Edwards *continues* to pose a threat to public safety. See generally Exh. E. It is affirmatively alleged that the Los Angeles County Superior Court failed to address the merits of the unwarranted *four (4) year denial* which the Board rendered, in essence affirming the Board's restatement of the reasons it used to justify denying parole. *Id.* at p. 314. Petitioner denies generally and specifically all remaining allegations.

4

### III.

Petitioner admits the allegations in paragraph 3

### IV.

Petitioner admits the allegation of paragraphs 4 that his state court habeas claims in the instant petition have been exhausted. Petitioner further admits that nine (9) claims were raised in a petition for review to the California Supreme Court. However, Petitioner does not understand Respondent's contradictory position that he does not admit that the claims have been exhausted "to the extent they are more broadly interpreted to encompass any systematic issues beyond this particular parole consideration hearing," and therefore denies said allegation. Except as specifically admitted herein, Petitioner generally and specifically denies each and every remaining allegation of said paragraphs 4.

### V.

Petitioner admits all allegations in paragraph 5.

### VI.

Petitioner generally and specifically denies the allegations in paragraph 6 that Petitioner fails to state or establish any grounds for federal habeas corpus relief pursuant to 28 U.S.C. § 2254(d). Both in the petition and in this denial and the accompanying Points and Authorities, Petitioner has set forth the grounds upon which this Court will find that the Board's decision to deny Mr. Edwards' parole, and the state court's sanction of the denial, violated Mr. Edwards' due process rights. As such, Petitioner denies the allegation that Mr. Edwards did not make a case for relief under both prongs of the Antiterrorism and Effective Death Penalty Act of 1996. As fully set forth herein, the state court's refusal to grant Mr. Edwards' relief from the Board's unconstitutional denial of parole both involved an unreasonable application of clearly established United States Supreme Court law, and were based on an unreasonable determination of the facts in light of the evidence presented. Except as specifically admitted herein, Petitioner generally and specifically denies each and every remaining allegation of said paragraph 6.

### VII.

Petitioner generally and specifically denies the allegation in paragraph 7. It is affirmatively alleged that the state court's determinations were contrary to United States

Supreme Court Law.   It is affirmatively alleged that under California's parole scheme, *Penal Code* § 3041, there is a cognizable liberty interest in release on parole.  *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979.)

## VIII.

Petitioner denies generally and specifically the allegation in paragraph 8 that Mr. Edwards does not have a federally protected liberty interest in parole under California *Penal Code* section 3041.  It is affirmatively alleged that under California's parole scheme, *Penal Code* § 3041, there is a cognizable liberty interest in release on parole.  *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979.)  Moreover, it is has now been made clear that California's parole scheme vests all prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protect by the procedural safeguards of the Due Process Clause. *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (citing *Sass v. Calif. Bd. Of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); *McQuillion v. Duncan*, 306 F.3d 895, 903 (9th Cir. 2002.)  It is further affirmatively alleged that Respondent misapplies *Sandin v. Conner*, 515 U.S. 472 (1995), misstates the rules of *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex* (1979) 442 U.S. 1, 7, and ignores *Board of Pardons v. Allen* (1987) 482 U.S. 369, 376-78, the latter two of which both directly found a federal liberty interest in parole based on the identical type of language as is contained in California's parole statute, *Penal Code* §3041. Petitioner specifically denies that this particular issue is currently under review by the Ninth Circuit in *Hayward v. Marshall*. Petitioner generally and specifically denies each and every remaining allegation in paragraphs 8.

## IX.

Petitioner generally and specifically denies all allegations in paragraph 9.   Under *McQuillion I, Sass, Irons* and *Biggs*, Petitioner was entitled to more due process protections than alleged, and even if not, he was not afforded a meaningful opportunity to be heard, and denies that the Board gave him due consideration, or that its explanation was sufficient, for all of the reasons stated in the petition, herein and in the accompanying points and authorities.

**X.**

Petitioner generally and specifically denies the allegations in paragraph 10. It is affirmatively alleged that the Supreme Court has set a standard of review in *Superintendent v. Hill*, 472 U.S. 445, 457 (1985), which provides the basis for the "some evidence" standard. This standard has been utilized by the Ninth Circuit in multiple published opinions, making it clear that under principles of federal due process, California inmates are entitled to a "some evidence" review of their parole hearing.    See *Sass, supra*, 461 F.3d 1123, *Irons, supra*, 479 F.3d 658, *Biggs, supra*, 334 F.3d at 914, *McQuillion, supra*, 306 F.3d at 903.   Furthermore, Petitioner specifically denies that the lack of a Supreme Court case directly involving a parole hearing precludes the Court from hearing Petitioner's case and granting relief. As fully set forth herein, in *Superintendent v. Hill*, 472 U.S. 445, 457 (1985), the Supreme Court clearly ruled that due process requires court review of the sufficiency of the evidence when a liberty interest is invoked, and in that context applied the "some evidence" standard to prison disciplinary hearings. As the Supreme Court recently clarified in *Panetti v. Quarterman*, ___ U.S.___, 127 S.Ct. 2842 (2007), AEDPA does not require that the Supreme Court address as specific fact pattern before a legal rule may be applied. Here, the Supreme Court has already addressed a virtually identical issue in *Hill* when they were examining the procedures and standard of review necessary in prison disciplinary hearings, the Supreme Court's "legal rule" must similarly be applied in the parole context as the Ninth Circuit found in *Sass v. California Board of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006). Petitioner denies all remaining allegations in paragraph 10.

**XI.**

Petitioner generally and specifically denies each and every allegation in paragraphs 11. The petition speaks for itself, and the claims being pursued therein are incorporated herein by reference as though set forth in full.

**XII.**

Petitioner generally and specifically denies the allegations in paragraph 12. Petitioner affirmatively alleges that as found by the Supreme Court in *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 12 (1979), under a federal due process analysis, the use of the mandatory "shall-unless" language in a parole statute creates a presumption that parole will be granted, absent the inmate falling into the statutory exception. See also *McQuillion I, supra*, 306 F.3d at

904-5; *Rosenkrantz v. Marshall* [hereafter *"Rosenkrantz VI"*], 444 F.Supp.2d 1063 C.D.Cal. (2006); *Sass v. California Bd. of Prison Terms* [hereafter *"Sass II"*], 461 F.3d 1123 9th Cir. (2006); *In re Ramirez*, 94 Cal.App.4th 549 (2001), *Rosenkrantz V*, 29 Cal.4th 616, 654 (2002) ["Accordingly, parole applicants in this state have an expectation that they will be granted parole unless..."]. This gives rise to a due process interest in parole. It has been held that Federal Court is to look to the state's statutes and regulations in order to determine "some evidence." *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007) (quoting *Hill*, 472 U.S. at 457, 105 S.Ct. 2768; *Sass*, 461 F.3d at 1128-29). Petitioner further alleges that the California Supreme Court has clarified that there must be evidence rationally showing that the inmate is ***currently*** dangerous. *In re Lawrence*, *supra*, ___Cal.Rptr.3d___, 2008 WL 3863606 (2008). It is affirmatively alleged that the Board's 2005 denial is not supported by any evidence that Mr. Edwards would present a ***current*** risk of danger to society if released. Mr. Edwards' programming has been exemplary. In addition, all psychiatric evaluations state that Edwards would ***not pose a risk of danger to society if released***. Moreover, the record does not support a finding that Mr. Edwards would pose a current danger if released, much less that he will remain a danger for the next four (4) years. As such, the Board's decision to deny parole and the state's court's decision to uphold the decision does not comport with due process.

It is further affirmatively alleged that the reasons the Board "relied" upon for the multi-year denial were insufficient and prohibited by the California parole statutes and controlling case law. It is affirmatively alleged that the Board's decision ignores the distinction made by the parole statute. On the one hand, an unsuitability finding requires that the Board find that "'consideration of the public safety requires a more lengthy period of incarceration...The postponement provision, on the other hand, requires a finding that 'it is not reasonable to expect that parole would be granted at a hearing during the following year...The first determination attempts to predict the risk to public safety, while the second attempts to predict that the risk is likely to continue for at least as long as the period of postponement. Although they are related, they are not identical." *In re Jackson*, 39 Cal. 3d 464, 478 (1985). It is alleged that here, the Board failed to cite any factual evidence that Mr. Edwards would pose a ***current*** risk. This void of factual support is even more lacking in the allegation that he would pose a risk for the next four (4) years.

## XIII.

Petitioner generally and specifically denies all allegations contained in paragraph 13. It is affirmatively alleged that the California Supreme Court has made it clear that the "some evidence" required for a parole denial is ***current*** dangerousness.  It is affirmatively alleged that the Supreme Court has set a standard of review in *Superintendent v. Hill*, 472 U.S. 445, 457 (1985), which provides the basis for the "some evidence" standard.  This standard has been utilized by the Ninth Circuit in multiple published opinions, making it clear that under principles of federal due process, California inmates are entitled to a "some evidence" review of their parole hearing.  See *Sass, supra*, 461 F.3d 1123, *Irons, supra*, 479 F.3d 658, *Biggs, supra*, 334 F.3d at 914, *McQuillion, supra*, 306 F.3d at 903. As alleged, *supra*, in *Superintendent v. Hill*, 472 U.S. 445, 457 (1985), the Supreme Court clearly ruled that due process requires court review of the sufficiency of the evidence when a liberty interest is invoked, and in that context applied the "some evidence" standard to prison disciplinary hearings. It has further been established that when a Federal Court is assessing whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, the analysis is framed by the statutes and regulations governing parole suitability determinations in that particular state. *Irons v. Carey,* 505 F.3d 846, 851 (9th Cir. 2007) (quoting *Hill,* 472 U.S. at 457, 105 S.Ct. 2768; *Sass,* 461 F.3d at 1128-29). Accordingly, California law must be reviewed in order to determine what findings are necessary to warrant a prisoner unsuitable.  *Id.*  As made clear by the California Supreme Court in *In re Lawrence*, the focal issue is ***current*** dangerousness.  *In re Lawrence*__Cal.Rptr.3d__2008 WL 3863606, p. 23 (2008).

## XIV.

Petitioner generally and specifically denies all allegations contained in paragraphs 14, 21 and 23. It is affirmatively alleged that immutable factors, without more, do not provide "some evidence" of current dangerousness. *In re Lawrence*__Cal.Rptr.3d__2008 WL 3863606, p. 23 (2008). As alleged *supra*, it has been established that when a Federal Court is assessing whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, the analysis is framed by the statutes and regulations governing parole suitability determinations in that particular state. *Irons v. Carey,* 505 F.3d 846, 851 (9th Cir. 2007) (quoting *Hill,* 472 U.S. at 457, 105 S.Ct. 2768; *Sass,* 461 F.3d at 1128-29).  Accordingly, California law

9

must be reviewed in order to determine what findings are necessary to warrant a prisoner unsuitable. *Id.* In its recent decision, the California Supreme Court held that California's parole statute demands that "some evidence" will support reliance on the commitment offense, or other immutable factors, "*only if those facts support the ultimate conclusion that an inmate continues to pose.*" *In re Lawrence*__Cal.Rptr.3d__2008 WL 3863606 at p. 23, emphasis in original. The court explained that the inquiry must be individualized and that the crime alone cannot be relied upon in isolation without consideration of the passage of time or the attendant changes in the inmate's psychological attitude and programming. *Id.* (citing *In re Rosenkrantz [Rosenkrantz V]* (2002) 29 Cal.4th 616, 682.) The court continued by saying that when a prisoner has served the base term of the applicable matrix, the underlying circumstances of the commitment offense alone will rarely provide a valid basis for denying parole when there is strong evidence of rehabilitation. *Id.* at p. 16. Here, Mr. Edwards has served beyond his matrix term.

Likewise, as the Ninth Circuit stated in *Biggs*, despite the fact that there may remain evidence to support a finding of egregiousness of the crime:

> A continued reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation.

*Biggs v. Terhune*, 334 F.3d 910, 916-17 (9th Cir. 2003.)

At this point, it is well established that the caution set forth in *Biggs v. Terhune, supra,* is in fact the standard. The rule is simply that the passage of time depletes the probative value of immutable, crime-based evidence as establishing current dangerousness. At some point, the predictive value of the crime is nonexistent. Here, even assuming that the commitment offense was "heinous, atrocious or cruel" as intended by section 2402(c)(1), too much time has passed, and too many other relevant factors have intervened during Mr. Edwards' incarceration, effectively nullifying the predictive value of the offense to show current dangerousness.[6]

It is affirmatively alleged that the Board relied largely on immutable facts without supporting evidence in concluding Mr. Edwards currently posed a risk of danger if released. See Exh. A, p. 74. ("I know you want us just to focus on what you've been doing in prison, but we cannot do that. You know can't do that, we can not ignore the crime." Exh. A, p. 74.) Additionally, it is affirmatively alleged that at the time of his 2005 hearing, Mr. Edwards had

surpassed the base term of the applicable matrix. In fact, with good time credit, Mr. Edwards has now entered the matrix for first degree, premeditated murder and he was not even the actual shooter. As the California Supreme Court held, when a prisoner has served the base term of the applicable matrix, the underlying circumstances of the commitment offense alone will rarely provide a valid basis for denying parole when there is strong evidence of rehabilitation. *In re Lawrence, supra,* at p. 16.

As such, it is affirmatively alleged that immutable facts, such as the crime or Mr. Edwards' past history, are no longer probative to the central issue of his current dangerousness given his commendable programming and positive record. Petitioner denies all remaining allegations in paragraphs 14, 21 & 23.

## XV.

Petitioner generally and specifically denies all allegations in paragraph 15. As alleged *supra,* it has been established that when a Federal Court is assessing whether a state parole board's suitability determination was supported by 'some evidence' in a habeas case, the analysis is framed by the statutes and regulations governing parole suitability determinations in that particular state. *Irons v. Carey,* 505 F.3d 846, 851 (9th Cir. 2007) (quoting *Hill,* 472 U.S. at 457, 105 S.Ct. 2768; *Sass,* 461 F.3d at 1128-29). It is affirmatively alleged that the California Supreme Court has clarified that any reliance upon the commitment offense, must be supported by evidence that the inmate poses a *current* risk of danger if released. *In re Lawrence__Cal.Rptr.3d__2008 WL 3863606* at p. 23, emphasis in original. It is further affirmatively alleged that the court held that the parole scheme contemplates that even those who commit the most aggravated murders may be paroled. *Id* at p. 16. The court continued by explaining that regardless of the status of the crime, there must be evidence of ***current*** dangerousness. *Id,* emphasis added. Thus, this is the "some evidence" that must be present for a parole denial.

Here, it is affirmatively alleged that Mr. Edwards was actually offered the opportunity to plead guilty to a charge of manslaughter based on the same set of facts the Board ***now argues demonstrate an "exceptionally callous disregard to human suffering."*** Exh. A, pp. 68-69. To this point, revisiting the court's analysis in *Scott I, supra,* 119 Cal.App.4th 871 is appropriate. In

---

[6]  As set forth previously, Mr. Edwards maintains his argument that the commitment offense does not satisfy the finding that the crime was "heinous, atrocious or cruel," and concedes this point only for this argument.

*Scott*, as in Mr. Edwards' case, the inmate received a plea offer for manslaughter. The *Scott* court concluded "it is impossible to imagine prosecuting authorities would have made such an offer if they believed they could show Scott acted in a dispassionate and calculated manner, such as in an execution style murder." *Scott I, supra*, 119 Cal.App.4th 871, 890. The court placed great importance on the fact that a pretrial offer was made and as a result of that offer, determined that the Board and the District Attorney were precluded from characterizing the offense as something greater. Similarly, the District Attorney in the instant case made an offer of manslaughter to Mr. Edwards in exchange for testimony against his co-defendants. Mr. Edwards declined this offer based on fear of retaliation against his family; regardless, the ***Board and the District Attorney are precluded from categorizing Mr. Edwards' crime as especially callous, cruel or egregious*** in order to support a parole denial. *Scott, supra*, at 890; Exh. A, pp. 55-56. The remaining allegations in paragraph 15 are generally and specifically denied.

### XVI.

Petitioner generally and specifically denies all allegations in paragraph 16. It is precisely the manner in which the regulatory factors were used in this case that renders them unconstitutionally vague, as applied. It is affirmatively alleged that the Board wholly misapplied the regulatory criteria mandated by *Cal. Code Regs*, tit. 15, §2402. The Board denied Mr. Edwards parole at his 2005 hearing based upon the commitment offense, characterizing it as being "carried in a manner which...demonstrates an exceptionally callous disregard to human suffering" and that "the offense was carried out in a calculated manner" and "the motive for the crime very trivial to the relation to the offense." Exh. A, pp. 68-69. It is alleged that the Board misapplied the regulations as the requirements, per the CDC's own definition, are not contained in Mr. Edwards' accomplice based second degree murder.

It is additionally affirmatively alleged that the California Supreme Court in *In re Lawrence* disposed of the "more than minimally necessary" standard and instead employed current dangerousness as the "some evidence" standard. It is specifically denied that that the Board did not solely rely upon the commitment offense to deny Mr. Edwards parole. It is affirmatively alleged that the Board stated in its decision, "I know you want us to just focus on what you've been doing in prison, but we cannot do that. You know can't do that, we cannot ignore the crime." Exh. A, p. 74. It further alleged that main reason relied upon by the Board was the commitment offense. All remaining allegations in paragraph 16 are denied.

## XVII.

As to the allegations of paragraph 17, Mr. Edwards specifically denies any implication that the Board actually gave due consideration to his positive programming, extensive educational achievements, his long list of self help and volunteer work, his history of always having full psychological clearance for parole, and solid parole plans. Petitioner generally and specifically denies each and every remaining allegation of said paragraph 17.

## XVIII.

Petitioner generally and specifically denies all allegations in paragraph 18.  It is affirmatively alleged that in *In re Rodriguez* (1975) 14 Cal.3d 639, the California Supreme Court stated held that when the Board fails to set a term at a prisoner's parole consideration hearing, the term shall be deemed to have been fixed at its maximum.  Therefore, for these proceedings, Petitioner's term has in effect been fixed at the rest of his natural life, i.e. Life Without the Possibility of Parole (LWOP). All remaining allegation sin paragraph 18 are denied.

## XIX.

Petitioner generally and specifically denies all allegations in paragraph 19.  It is specifically denied that Mr. Edwards must first be found suitable before the Matrix can apply.  It is affirmatively alleged that the California Supreme Court in *In re Lawrence* held that the provided Matrix is critical in parole determination.  *In re Lawrence*__Cal.Rptr.3d__2008 WL 3863606 at p. 16.  The court explained that the statutory and regulatory mandate is that inmates are to normally receive parole.  For those who have committed murder, after the inmate has served the suggested base term, the underlying circumstances of the commitment offense alone will rarely provide sufficient evidence for denying parole when the inmate has demonstrated rehabilitation.  *Id.*  As such, it is affirmatively alleged that the setting of a term for Mr. Edwards presents little problem under the Matrix of (Uniform) Base Terms.  The applicable categories are Victim Category I (Participating Victim) and Circumstance Category A (Indirect Cause) apply, making the uniform term 15-16-17 years before post conviction custody credits under *Cal. Code Regs.*, tit. 15 § 2410.[7]  Attributing custody credits under *Cal. Code Regs.*, tit. 15 § 2410 of four (4)

---

[7] The matrix is established under Title 15 of the *California Code of Regulations* § 2403(c), and sets a term based on the circumstances of the killing and the role of the victim, which term is then reduced by post conviction credits at the rate of 4 months for each 12 months served free of CDC-115's, under *Cal. Code Regs.*, tit. 15 § 2410. Under

months per year for thirteen (13) of the over nineteen (19) years he has been incarcerated, he has accrued an additional four (4) years of credit, thus his term of incarceration, with good time credits is over twenty three (23) years. Under the Matrix, the maximum term is seventeen (17) years before the § 2410 reduction. As a result, he has now served more than six (6) years *over* the equivalent of the high end of his uniform term established by the matrix for his crime. Further, Mr. Edwards' term of imprisonment has almost exceeded the maximum aggravated base term for the most heinous *second-degree murders* prescribed under the Matrix, and with credit has entered the Matrix for first degree, premeditated, deliberated murder even though he was only convicted of second degree accomplice murder. *See Cal. Code Regs*, tit. 15, §2403(c). It is further affirmatively alleged that given Mr. Edwards' programming, and the fact that he has far exceeded the applicable matrix, there is no valid basis for denying parole. The remaining allegations in paragraph 19 are denied.

## XX.

Petitioner admits, in part, the allegation of paragraph 20, that a prison disciplinary record must be considered by the Board. However, Petitioner generally and specifically denies that Mr. Edwards' disciplinary history provides any evidence of current dangerousness. It is affirmatively alleged that the Board's rules specifically require that an *absence of violence* in a prisoner's life as a juvenile (*Cal. Code Regs.*, tit. 15, §2402(d) (1)) and/or as an adult (§2402(3) (5)) must be considered as factors supporting a grant of parole. See also, *In re Mark Smith*, 109 Cal.App.4[th] 489, (2003) ["Although a 'previous record of violence' (meaning an attempt to inflict serious injury or other 'assaultive behavior') is a circumstance tending to establish unsuitability for parole (*Cal. Code Regs*, tit. 15, §2281(c) (2); *In re Rosenkrantz, supra*, 29 Cal.4th at p.653), there is nothing in the governing statutes or regulations to support the Governor's reliance on *Smith's* non-violent criminal record."].) Those are the Board's own rules and they cannot arbitrarily be ignored.

Mr. Edwards has never received a violence related disciplinary action. Exh. B, p. 199. Mr. Edwards has absolutely no history of gang affiliation or activity in over nineteen (19) years of incarceration. Exh. A, p. 50-51, Exh. B, pp. 102-103, 120. At issue in the most recent observation period were Mr. Edwards' one (1) Administrative CDC-115 and three (3) 128a

---

these rules, the maximum matrix time for Mr. Edwards falls within a range of 15, 16, or 17 years, which is then reduced by the 25% credits under § 2410.

14

counseling actions.[8]    However, none were for violent behavior.[9]    As stated in the 2005 psychological report authored by Dr. Macomber, "In considering his potential for dangerous behavior within the institutional environment, inmate Edwards has several minor disciplinaries. *These disciplinaries do not indicate a potential for dangerous behavior.* There is no evidence of possession of weapons, participation in riots, drug trafficking, or other dangerous behavior. *His last disciplinary was possession of a cooking utensil[10] that he used to cook food with in his cell. Based on his maturity and prosocial attitude, his potential for violence is below average in comparison to other inmates."* Exh. B, p. 102. emphasis added.    Moreover, two of the recent disciplines received were the result of miscommunications between Mr. Edwards and CDCR staff, including the refusal of staff to accommodate Mr. Edwards' debilitating knee injury when requesting he submit to a full body search.    The circumstances of the recent disciplinaries were explained in detail to the Board during Mr. Edwards' 2005 hearing; specifically, Mr. Edwards explained, and the Board had the opportunity to evaluate his explanation, that on account of his knee brace, he could not move his leg as requested by staff.    Exh. A, p. 43-44.    All remaining allegations in paragraph 20 are denied.

## XXI.

Petitioner generally and specifically denies all allegations in paragraph 22.    It is affirmatively alleged that the Federal Court is to look to the state's statutes and regulations in order to determine "some evidence." *Irons v. Carey,* 505 F.3d 846, 851 (9th Cir. 2007) (quoting *Hill,* 472 U.S. at 457, 105 S.Ct. 2768; *Sass,* 461 F.3d at 1128-29).    As such, it is not irrelevant as to how the California Supreme Court grants review as the court's process can shed light on its interpretation of the applicable statute and regulations.

---

[8]Mr. Edwards' disciplinary history includes the following since the beginning of his incarceration but not including the most recent observation period: five (5) CDC 115's (refusing a direct order on 4-11-91; disobeying a direct order on 8-6-92; refusing a direct order on 11-03-95; threatening staff on 9-07-96; disobeying a direct order on 8-18-97), six (6) 128(a)s (absent without permission on 8-06-91; refusal to work on 6-10-91; delaying release in 1991; disobeying direct orders in May of 1996; infraction using work card on August of 1996 and disobeying verbal orders in 2000).    Exh. B, p. 199.    None of the previously stated disciplinary actions were violent.    During the recent observation period, Mr. Edwards, as discussed, *supra,* received three (3) 128(a)s and one (1) Administrative 115 in 2004, again all non-violent..    Exh. A, pp. 41-42.

[10] On May 22, 2004, Mr. Edwards received an administrative 115 for keeping a pie tin in his cell with which he prepared occasional food items.    Exh. A, p. 41.

## XXII.

Petitioner generally and specifically denies each and every allegation in paragraph 24. Petitioner affirmatively alleges that an evidentiary hearing may be necessary to resolve the factual disputes and that the existing state court record is not sufficient and should be properly be augmented.[11]

## XXIII.

Petitioner generally and specifically denies the allegations in paragraph 25 that if the petition is granted, Mr. Edwards' remedy is limited to a new parole consideration. If the petition is granted, Mr. Edwards is entitled to immediate release as a remedy. See ¶XXX, *infra*.

## XXIV.

Petitioner generally and specifically denies each and every allegation of paragraphs 26. For the reasons set forth herein, in the accompanying Points and Authorities, and in the original petition, Petitioner has established his grounds for relief and shown that he meets both prongs of the AEDPA.

## XXV.

Petitioner affirmatively alleges that he has participated in every applicable self help program available to him in the institution. It if further alleged that at the 2005 hearing, Mr. Edwards inquired as to the self help the Board wanted him to do to which the Board could not cite any specific classes. The Board suggested that he do self study programs since he had completed everything the Institution offers. Exh. A, p. 76. He has received several psychological evaluations over the years, each concluding that Mr. Edwards does not suffer from any mental disorders and that if released, would pose *no more danger to society than the average citizen on the streets*. Exh. B, pp. 99-111.

---

[11] A simple test can be done in connection with an evidentiary hearing to illustrate the vagueness of the regulations as they are currently being applied. This Court can order respondent to produce the decisions by the parole Board during the ninety (90) days before and after Mr. Edwards' hearing, along with the Governor's decisions regarding any case where parole was granted by the Board (or en banc decision or rulings by the Decision Review Unit as to any case that was subsequently reversed or modified), and as to any inmate that was released, any prior decisions of the Board denying parole as to that inmate. Petitioner anticipates that this evidence would show that in 100% of all murder cases, the crime has been found to be "especially heinous, atrocious, or cruel" at some point. Thus, as

### XXVI.

Petitioner alleges that The Board makes findings that are simply based on the language contained in a form, BPT 1000a, rather than an actual individualized assessment of the inmate's suitability, and such findings are unsupported by the record.

### XXVII.

Mr. Edwards' case is further compelling due to the fact that he was ***only nineteen (19) years of age when the commitment offense occurred*** and over the last nineteen (19) years, he has used his time in prison to rehabilitate himself and has tirelessly worked to prepare for eventual release. As held by the United States Supreme Court in *Roper v. Simmons*, the personality traits of juveniles are more transitory and less fixed than adults. *Roper v. Simmons*, 543 U.S. 551, 568-571 (2005). In the recent decision, the California Supreme Court stressed the importance of evaluating the inmate's age at the time of the commitment offense, the passage of time, the developed maturity and mental state. *In re Lawrence*, *supra*, ___Cal.Rptr.3d___2008 WL 3863606 at p. 23. It is affirmatively alleged that Mr. Edwards' has demonstrated rehabilitation and is no longer an immature youth, but a remorseful individual who is dedicated to improvement, his faith and to giving back to society.

### XXVIII.

For the reasons set forth herein, there was no competent evidence to support the Board's decision. Here, the evidence indisputably showed that Mr. Edwards has programmed positively and has no need for further self help or therapy. His achievements meet or exceed every requirement for parole suitability, yet the Board failed to view them as factors favoring the application for parole.

### XXIX.

Petitioner affirmatively alleges that there is no factual evidence to support the Board's unjustified four (4) year denial. Mr. Edwards has received full clearance from the CDC psychologists and all of his reports have stated that he would not pose a risk of danger to society if released. Exh. B, pp. 102, 107. Given the psychological clearance, Mr. Edwards' dedication

---

applied, the phrase would be violative of federal due process, in that it can fit any crime, and has lost the ability to distinguish crimes that truly are particularly egregious.

to self help and his overall programming, the four (4) year denial is not supported by the evidence.

## XXX.

Petitioner affirmatively alleges that jurisdiction, venue and exhaustion issues are all satisfied in this case. Habeas corpus is the proper remedy at this time.

## XXXI.

The Board in fact failed to properly consider any of the evidence, and ignored their legal responsibility in reviewing Mr. Edwards' suitability for parole. Despite the Board's recitations of "findings" of unsuitability factors based on the crime, this decision was not based, nor could it properly be based, on the enumerated factors. Nor was there any evidence to support the Board's claimed findings.

## XXXII.

Mr. Edwards re-alleges and incorporates herein by reference each and every allegation and all of his claims as presented in his Petition, and the factual showing in his exhibits, and affirmatively alleges that Respondent, in its Return, has done nothing more than attempt to re-litigate the offense itself, and restate the Board's decision, without establishing a lawful basis for the denial of parole, or offering any real explanation as to how or why the evidence supports a finding that Mr. Edwards would currently pose an unreasonable risk of danger to the public if released. Likewise, Mr. Edwards incorporates herein by reference the memorandum of points and authorities and exhibits submitted with the petition, and the memorandum of points and authorities and exhibits submitted herewith. These documents provide the legal and factual basis for the claims raised herein. As stated throughout the Traverse, the California Supreme Court has made clear the criteria to use in order to deny parole.

## *REMEDY*

## XXXIII.

Mr. Edwards is entitled to an order of release. The Board, as alleged above, have had the opportunity to remedy the wrong and have not. As the court noted in *Ramirez, supra*, at 561, the existence of a right carries with it the corollary principle that there must "also exist [] a remedy against their abrogation [citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 161-163 (1803)]. The Court of Appeal in the case of *In re Rosenkrantz* [*Rosenkrantz II*], 80 Cal. App. 4th 409, 428 (2000), stated "we flatly reject the Board's contention that (a) *Rosenkrantz'* only remedy is the

*continuing charade of meaningless hearings*, and (b) that the Superior Court lacks the power to compel the Board to follow the law." emphasis added. *Ramirez* merely stands for the proposition that courts should not ordinarily take the matter out of the paroling authority's hands in the first instance, when there is a potential, based on the passage of time, that new facts may exist, that would effect how the new decision would be made. Here, it would be irrational to keep sending the case back to the Board, since there are no new facts, except positive ones. Thus, the only proper action is to order Mr. Edwards' released from custody.

### PRAYER

WHEREFORE, Mr. Edwards respectfully submits that the petition for writ of habeas corpus should be granted, and that he is entitled to the relief requested in the petition.

Dated:    August 31, 2008                    Respectfully submitted,

LAW OFFICE OF TRACI S. MASON

By_____ /s/ Traci S. Mason_____
            TRACI S. MASON,
            Attorneys for Petitioner,
            WILLIE EDWARDS