# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILLIE EDWARDS,

     Petitioner,

       -vs-

BEN CURRY, Acting Warden,

     Respondent.

     On Habeas Corpus.

_____/

ARNOLD SCHWARZENEGGER,
Governor, BOARD OF PAROLE
HEARINGS,

     Real Parties in Interest.

_____/

Case No. C-08-1923 CW

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TRAVERSE TO RESPONDENT'S RETURN TO ORDER TO SHOW CAUSE RE PETITION FOR WRIT OF HABEAS CORPUS

TRACI S. MASON
SBN 237663
LAW OFFICE OF TRACI S. MASON
45 E. Julian Street
San Jose CA 95112
(408) 286-2808

Attorneys for Petitioner,
WILLIE EDWARDS

1
2
3

## *TABLE OF CONTENTS*

TABLE OF CONTENTS ………………………………………………………….....i

TABLE OF AUTHORITIES………………………………………………….....ii

INTRODUCTION……………………………………………………….............1

LEGAL ARGUMENT……………………………………………………….....3

RESPONDENT'S ARGUMENT THAT PETITIONER HAS NO DUE PROCESS RIGHTS BEYOND BEING ALLOWED TO PARTICIPATE IN THE HEARING & BE TOLD OF THE BASIS FOR THE DENIAL IS INCONSISTENT WITH CLEAR NINTH CIRCUIT AUTHORITY ……………………………….............................3

BECAUSE THE BOARD'S DECISION FINDING THAT PETITIONER WAS AN UNREASONABLE RISK OF DANGER IF RELEASED ON PAROLE WAS NOT SUPPORTED BY ANY EVIDENCE, IT WAS A VIOLATION OF CLEARLY ESTABLISHED FEDERAL LAW……………………………………………...5

THE CALIFORNIA SUPREME COURT DISPOSED OF THE "MORE THAN MINIMALLY NECESSARY" STANDARD……………...............................................6

MR. EDWARDS' COUNSELING CHRONOS AND NON VIOLENT DISCIPLINES DO NOT PROVIDE EVIDENCE OF CURRENT DANGEROUSNESS…...................8

THERE IS NO EVIDENCE THAT MR. EDWARDS' REQUIRES MORE SELF-HELP AND THERAPY……………………………………………………...9

CONCLUSION…. ……………………………………………………10

TRACI S. MASON
SBN 237663
LAW OFFICE OF TRACI S. MASON
45 E. Julian Street
San Jose CA 95112
(408) 286-2808

Attorneys for Petitioner,
WILLIE EDWARDS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILLIE EDWARDS,                              C-08-1923 CW

    Petitioner,                              ***MEMORANDUM OF POINTS
                               AND AUTHORITIES IN
        -vs-                  SUPPORT OF TRAVERSE TO
                                RESPONDENT'S RETURN TO
BEN CURRY, Acting Warden,     ORDER TO SHOW CAUSE RE
                                PETITION FOR WRIT OF
    Respondent.              HABEAS CORPUS***

    On Habeas Corpus.
_____/
ARNOLD SCHWARZENEGGER,
Governor, BOARD OF PAROLE
HEARINGS,

    Real Parties in Interest.
_____/

### INTRODUCTION

Petitioner Willie Edwards appears before this Court having been denied parole for the third time. At the time of the 2005 denial, Mr. Edwards had been incarcerated for seventeen (17) years on a seventeen (17) to life sentence for accomplice based second degree murder. Mr. Edwards was a mere nineteen (19) years of age at the time of the commitment offense, and since his incarceration, he has worked diligently to improve himself. At the 2005 hearing, the Board acknowledged Mr. Edwards' dedication to self help and his full psychological clearance, but held that despite Mr. Edwards' rehabilitation, they could not overlook the crime. Exh. A, p. 74, "I know you want us just to focus on what you've been doing in prison, be we cannot do that.

1

You know can't do that, we cannot ignore the crime." The Board alleged that they "couldn't get a handle" on how Mr. Edwards made the leap from the crime to his positive programming. *Id.* The Board further alleged that they know that Mr. Edwards is sincere, but that they "could not measure any remorse or insight" despite having full clearance from the CDC psychologist, who specifically found that Mr. Edwards "does feel sorrow, remorse, guilty and poor judgment on his part. His feelings appear to be sincere and genuine." Exh. B, p. 102. In fact, all of Mr. Edwards' psychological reports have been favorable, holding that he is remorseful and would not pose a risk of danger to society if released. *Id.* at pp. 99-111. Lastly, the Board cited Mr. Edwards' counseling chronos and non-violent disciplines in support of the denial. However, as concluded in the 2005 psychological report authored by Dr. Macomber, "In considering his potential for dangerous behavior within the institutional environment, inmate Edwards has several minor disciplinaries. ***These disciplinaries do not indicate a potential for dangerous behavior.*** There is no evidence of possession of weapons, participation in riots, drug trafficking, or other dangerous behavior. ***His last disciplinary was possession of a cooking utensil[1] that he used to cook food with in his cell. Based on his maturity and prosocial attitude, his potential for violence is below average in comparison to other inmates…his potential for dangerous behavior in the community at this point in his life is no greater than that of the average citizen.***" Exh. B, p. 102. emphasis added. As such, there was no evidence that Mr. Edwards would pose a current risk of danger to society if released and yet he was again denied a parole date. As the California Supreme Court recently made clear in *In re Lawrence*, the focal issue and determining factor at suitability hearings is ***current*** dangerousness. *In re Lawrence* Cal.Rptr.3d 2008 WL 3863606, p. 23 (2008). The court stressed the fact that the statute demands a standard of current dangerousness that is supported by "some *evidence*, not merely by a hunch or intuition." *In re Lawrence, supra,* Cal.Rptr.3d 2008 WL 3863606 at p. 17, emphasis in original.) Here, there is nothing in Mr. Edwards' demeanor, mental state or programming that supports a finding that he would pose a risk of ***current*** danger if released. Moreover, there is absolutely no evidence to support the wholly ***unjustified four (4)*** year denial that the Board imposed.

---

[1] On May 22, 2004, Mr. Edwards received an administrative 115 for keeping a pie tin in his cell with which he prepared occasional food items. Exh. A, p. 41.

2

*LEGAL ARGUMENT*

**I.     *RESPONDENT'S ARGUMENT THAT PETITIONER HAS NO DUE PROCESS RIGHTS BEYOND BEING ALLOWED TO PARTICIPATE IN THE HEARING & BE TOLD OF THE BASIS FOR THE DENIAL IS INCONSISTENT WITH CLEAR NINTH CIRCUIT AUTHORITY.***

Respondent's lead argument is that this Court need not conduct any evaluation of the sufficiency of the evidence, asserting that clearly established federal law does not permit such review. Answer, pp. 7-10. Of course, such a review is expressly required by *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006), *Irons v. Carey* [hereinafter *Irons II*], 479 F.3d 658 (9th Cir. 2007), and *McQuillion v. Duncan*, 306 F.3d 895, 904 (9th Cir. 2002), clear Ninth Circuit precedent that is binding on this Court.

In the answer, Respondent attempts to lessen the due process rights that should be afforded Mr. Edwards at his parole hearing by asserting that he is entitled to no more than (1) an opportunity to be heard; and (2) when parole is denied, a statement by the board informing him in what respects he falls short of qualifying for parole. Answer, p. 7, citing *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 16 (1979). However, in *Superintendent v. Hill*, 472 U.S. 445, 457 (1985), the Supreme Court clearly ruled that due process requires court review of the sufficiency of the evidence when a liberty interest is invoked, and in that context applied the "some evidence" standard to prison disciplinary hearings. *Hill* was cited in *Sass*, *Irons II*, and *McQuillion* as a basis for applying the "some evidence" standard to parole hearings. In fact, the Ninth Circuit in *Sass* specifically stated,

> To hold that less than the some evidence standard is required would violate clearly established federal law because it would mean that a state could interfere with a liberty interest-that in parole-without support or in an otherwise arbitrary manner. We therefore reject the state's contention that the some evidence standard is not clearly established in the parole context.

*Sass*, 461 F.3d at 1129. Respondent simply ignores this established Ninth Circuit authority, urging that *Carey v. Musladin*, _U.S._, 127 S. Ct. 649 (2006), which deals with an entirely different set of circumstances, somehow means that *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1 (1979) restricts parole applicants to the type of rights that would apply in a state that does not use mandatory language in its parole statute. However, in *Board of Pardons v. Allen*, 482 U.S. 369-377-78 (1987), a case decided ***after*** *Greenholtz*, the Supreme Court stated

3

that a liberty interest arises out of the state's use of mandatory language in their parole statute. *Allen*, 482 U.S. at 377-78. Of course, *California Penal Code* §3041 is precisely such a statute, as the Ninth Circuit has repeatedly determined in cases such as *McQuillion I, Sass* and *Irons*.

Respondent's argument is that in the absence of a Supreme Court decision specifically applying that standard to prison parole hearings, it is not considered clearly established Supreme Court law. Answer, p. 8. In *Panetti*, the Supreme Court explained,

> AEDPA does not 'require state and federal courts to wait for some nearly identical fact pattern before a legal rule must be applied.' *Carey v. Musladin*, 549 US ---,---, 127 S.CT 649, 656 (2006) (slip op., at 2)(Kennedy, J., concurring in judgment.) Nor does AEDPA prohibit a federal court from finding an application of a principle unreasonable when it involves a set of facts different from those of the case in which the principle was announced. [citation omitted] The statute recognizes that, to the contrary, even a general standard may be applied in an unreasonable manner.

*Panetti*, 127 S.Ct. 2842, 2858. Here, unlike *Musladin,* and the authorities the Court relied on in that context, the present case does not pose a completely different scenario than what the Supreme Court faced in *Hill. Hill* involved prison disciplinary hearings and the present case concerns prison parole hearings. Both are conducted by the state and both address how long a prisoner may be incarcerated. Because both hearings are given by the same entity within the state, the correctional division of the state's executive branch, the Ninth Circuit has repeatedly used the standard espoused in *Hill* as clearly established Supreme Court authority for the application of the "some evidence" standard in the parole context. See, *Irons II, supra, Sass, supra, McQuillion I, supra.* Thus, as explained by the Supreme Court in *Panetti, Musladin* does not prohibit the use of *Hill* as clearly established Supreme Court authority, and does result in stripping Mr. Edwards' due process rights on the theory that all he gets is to be present at his parole hearing and to be told why the Board denied parole. *Panetti,* 127 S.Ct. at 2858.

II.    ***BECAUSE THE BOARD'S DECISION FINDING THAT PETITIONER WAS AN UNREASONABLE RISK OF DANGER IF RELEASED ON PAROLE WAS NOT SUPPORTED BY ANY EVIDENCE, IT WAS A VIOLATION OF CLEARLY ESTABLISHED FEDERAL LAW.***

Respondent takes issue with what the appropriate focus must be when a court reviews the evidentiary sufficiency of a parole decision. See generally, Answer, pp. 9-10. Respondent concedes that the California Supreme court has adopted Hill's "some evidence" test as the judicial standard, but alleges that ***current*** dangerousness is not the standard, therefore Mr. Edwards has not shown that the state courts unreasonably applied the standard. Answer, p. 9. It has been held that Federal Court is to look to the state's statutes and regulations in order to determine "some evidence." *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007) (quoting *Hill*, 472 U.S. at 457, 105 S.Ct. 2768; *Sass*, 461 F.3d at 1128-29). The "some evidence" standard was recently made clear by the California Supreme Court in *In re Lawrence*, where it was held that the focal issue and determining factor at suitability hearings is ***current*** dangerousness. *In re Lawrence__*Cal.Rptr.3d__2008 WL 3863606, p. 23 (2008). The court held that California's parole statute demands that "some evidence" will support reliance on the commitment offense, or other immutable factors, "*only* if those facts support the ultimate conclusion that an inmate *continues* to pose a an unreasonable risk to public safety." *In re Lawrence__*Cal.Rptr.3d__2008 WL 3863606 at p. 23, emphasis in original. As explained more fully in the Petition and accompanying points and authorities, the Los Angeles County Superior Court's decision to uphold the Board's denial failed to reflect the focus on ***current*** dangerousness and instead summarily stated that "some evidence" existed to support the Board's finding that the commitment offense was carried out in a calculated and dispassionate manner. Exh. E, pp. 313-314. The California Supreme Court explained in *In re Lawrence* that the inquiry must be individualized and that the crime alone cannot be relied upon in isolation without consideration of the passage of time or the attendant changes in the inmate's psychological attitude and programming. *Id.* (citing *In re Rosenkrantz [Rosenkrantz V]* (2002) 29 Cal.4th 616, 682.) The court continued by saying that when a prisoner has served the base term of the applicable matrix, the underlying circumstances of the commitment offense alone will rarely provide a valid basis for denying parole when there is strong evidence of rehabilitation. *Id.* at p. 16. Here, Mr. Edwards has served beyond his matrix term. Mr. Edwards has additionally received full psychological clearance. Exh. B, pp. 99-111. In fact, it must be noted that all of Mr. Edwards'

5

psychological evaluators have concluded that he *would not pose a risk of danger* if released and his prognosis for successful living is very good to excellent. *Id.* As early as 1996, the evaluating psychologist concluded that "[i]n many ways [Mr. Edwards] seems much more insightful and aware that reactive behavior can lead to extremely negative consequences." *Id.* at p. 109. Thus, it has been determined by the CDC's own professionals that Mr. Edwards would not pose a risk of danger if released and that he possesses great insight and remorse. The Board's allegations are wholly without merit

Under *Cal. Code Regs.*, tit. 15 § 2402(a), a finding of unsuitability under the *Penal Code* § 3041(b) "public safety" exception requires a finding that the inmate currently presents an unreasonable risk of danger to society if paroled. *See In re Lawrence__*Cal.Rptr.3d__2008 WL 3863606 at p. 23. When the Board denies parole, it specifically makes a finding under 2402(a), as it did here, that "the prisoner is not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." Exh. A, p. 68.[2] This determination that the inmate presents a current and unreasonable risk of danger if paroled must be supported by the requisite "some evidence." *Here, it is taken even one step further because the Board issued an unwarranted four (4) year denial, thereby making the determination that there is "some evidence" that Mr. Edwards will remain an unreasonable danger for the next four (4) years.*

Assuming for a moment that there was "some evidence" in the record to validly support the Board's citation of the §2402(c) factors, respondent has *still* failed to address the final and most important issue before it: is there any evidence in the record to support the Board's conclusion that Mr. Edwards is *currently a danger to society?* As explained in Mr. Edwards' petition, there is no evidence that he is currently dangerous or that he will remain a danger for the next four (4) years.

###   A. THE CALIFORNIA SUPREME COURT DISPOSED OF THE "MORE THAN MINIMALLY NECESSARY" STANDARD.

Respondent alleges that there was some evidence to support the Board's findings because the Los Angeles County Superior Court held that Mr. Edwards' commitment offense was carried

---

[2] Unless otherwise noted, all cited exhibits are to Petitioner's exhibits submitted with the Petition.

out in a "calculated, dispassionate manner." Answer, p. 10. It is axiomatic that the factors of suitability, and the rules of how they are interpreted, must come from state law. See *e.g., Sass*, 461 F.3d at 1135 (Reinhardt, J., dissenting) ["When we assess whether a state parole board's suitability determination is supported by 'some evidence' in a habeas case, our analysis is framed by state law."] The California Supreme Court recently held that because the minimum elements test "functionally removes consideration of relevant suitability factors and fails to assess *current* dangerousness, substantially undermines the rehabilitative goals of the governing statutes." *In re Lawrence__*Cal.Rptr.3d__2008 WL 3863606 at p. 22, emphasis in original.    The court went on to explain that because almost every cases has more than the "minimum necessary" to convict, that such a test would mandate affirmance of every denial, regardless of the rehabilitation. *Id*. "Rather, the relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after the commission of the offense." *Id*. Here, there is no evidence that Mr. Edwards' remains a danger nineteen (19) years after the crime.

Respondent further alleges that the Los Angeles Superior Court also found that it was proper for the Board to rely on Mr. Edwards' prior arrest in support of a finding of unsuitability. Answer, p. 10. This is contrary to California law, which the California Supreme Court has held that the parole statute demands that "some evidence" will support reliance on the commitment offense, or other immutable factors, "*only* if those facts support the ultimate conclusion that an inmate *continues* to pose." *In re Lawrence__*Cal.Rptr.3d__2008 WL 3863606 at p. 23, emphasis in original. Here, the Board, as did the superior court, merely cited the immutable factors without explaining how they show that Mr. Edwards would pose a *current* risk of danger if paroled. As stated, *supra*, Mr. Edwards has received completely positive psychological evaluations. The evaluating clinicians have found that Mr. Edwards has matured and taken responsibility for his actions and is no longer the immature nineteen (19) year old who committed the offense. Moreover, there is absolutely no evidence that Mr. Edwards has had any gang involvement since his incarceration. As such, the denial of Mr. Edwards' parole date is contrary to clearly established Supreme Court law.

**B.  MR. EDWARDS' COUNSELING CHRONOS AND NON VIOLENT DISCIPLINES DO NOT PROVIDE EVIDENCE OF CURRENT DANGEROUSNESS.**

Respondent further alleges that the Los Angeles Superior court found that there was some evidence to support the Board's denial based on Mr. Edwards' institutional behavior. Answer, p. 10. Specifically, the Board relied upon three (3) 128a counseling chronos and one (1) CDC-115 administrative disciplinary report. However, according to the CDCR's own psychologist, the party with the most professional competence in determining the weight of Mr. Edwards' disciplinary history vis-à-vis his parole suitability, states: *"These disciplinaries do not indicate a potential for dangerous behavior.* His last disciplinary was possession of a cooking utensil that he used to cook food with in his cell." Exh. B, p. 102, emphasis added.  The Board questioned Mr. Edwards on his disciplinary infractions and Mr. Edwards was very forthcoming about the incidents.  He explained that in one instance, he attempted to communicate with the correctional officer and request that the officer treat him a more respectfully.  The result of this attempt at honest communication was a 128(a).  A second inquiry was targeted at an incident that occurred on October 14th, 2000, when an officer requested that Mr. Edwards submit to a full body search.  Mr. Edwards explained to the officer that he could not move his leg on account of his knee injury.  Unfortunately, this interaction resulted in a disciplinary action.  Exh. A, pp. 40-44.[3]

Consistent with the focus of §3041, which is clearly on determining whether an inmate poses a current risk of danger to the community, it is difficult to imagine that the above discussed violations, although some classified as "serious" misconduct under *Cal. Code Regs.*, tit. 15, § 3314(b), should form the basis for a finding of parole unsuitability in the midst of an otherwise wholly positive record.  There is nothing in Mr. Edwards' record that is even remotely indicative of violence potential.  Further, the Board's characterization that on account of Mr. Edwards' disciplinary record, "[A] longer period of observation and evaluation of the inmate is required before the inmate is suitable for parole" simply due to these rules violations is nothing short of egregious.  Exh. A, p. 73.  Although Mr. Edwards does not herein challenge his CDC-115 or 128(a) violations, *they are clearly not indicative of the overall progress he has made while incarcerated.*

8

The relevant inquiry is whether the aforementioned can reliably be used to show current dangerousness. Given Mr. Edwards' dedication to self help, his deep Christian faith, solid parole plans, full psychological clearance and complete honesty with the Board, there is no nexus between the cited facts and the finding that Mr. Edwards would pose a risk of danger if released. As held by the California Supreme Court, "it is evident that the Legislature considered the passage of time-and the attendant changes in a prisoner's maturity, understanding, and mental state-to be highly probative to the determination of current dangerousness." *In re Lawrence* __Cal.Rptr.3d__ 2008 WL 3863606 at p. 22. Here, there is ample evidence of rehabilitation, growth, mental maturity and positive attendant changes.

## C. THERE IS NO EVIDENCE THAT MR. EDWARDS' REQUIRES MORE SELF-HELP AND THERAPY

The Board puzzlingly "found" that Mr. Edwards "has programmed in a limited manner." Exh. A, p. 70. Further, the Board inexplicably ordered a new psychological evaluation in its recommendations, despite explicitly acknowledging that Dr. Macomber, the latest evaluating psychologist, was *wholly supportive of release*. Exh. A, p. 71. In an even more egregious display of arbitrariness, the Board commented that "*We're going to request another psychological evaluation because we just don't feel that this one really explored what we need to explore, so we would ask you to cooperate with clinicians in the completion of a new evaluation.*" Exh. A, p. 74, emphasis added. However, as noted, *supra*, Mr. Edwards has always received positive psychological evaluations. Exh. B, pp. 99-111. As explained more fully in the Petition and the accompanying Points and Authorities, aside from Mr. Edwards' extensive record of self-help activities, particularly in the area of religious enlightenment, psychological evaluations spanning the last nine (9) years have indicated that Mr. Edwards' parole suitability *should not* be based on psychological factors. Mr. Edwards' last psychological evaluation, conducted in 2005, clearly provides a current clinical position unlikely to change, showing that Mr. Edwards will never require extensive therapy.

---

[3] The Board also cited to a disciplinary action against Mr. Edwards for being found in possession of two packages of *chocolate chip cookies* and exiting the shower room behind schedule. *See generally* Exh. A, pp. 40-44.

9

### CONCLUSION

Based on the foregoing, Petitioner respectfully requests that this Court issue a Writ of Habeas Corpus, directing that he be discharged from all custody, actual and constructive, or alternatively, order the Board of Prison Terms to conduct a new hearing and absent any new evidence to show adverse change since the 2005 hearing, to find Mr. Edwards suitable for parole and set a parole date consistent with the matrix for second degree murders. *Cal. Code Regs.*, tit.15 §2403(d).

Dated:   August 31, 2008                           Respectfully submitted,

                                                   LAW OFFICE OF TRACI S. MASON


                                                   By_____/s/ Traci S. Mason_____
                                                         TRACI S. MASON,
                                                         Attorneys for Petitioner,
                                                         WILLIE EDWARDS