IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

WILLIE EDWARDS,

    Petitioner,

    v.

BEN CURRY,

    Respondent.
                                      /

No. C 08-1923 CW

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

INTRODUCTION

Petitioner Willie Edwards, a state prisoner incarcerated at the Correctional Training Facility in Soledad, California, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, alleging that his constitutional rights were violated when the Board of Parole Hearings (the Board) denied him parole for the third time on September 29, 2005. As grounds for federal habeas relief, Petitioner claims that: (1) "some evidence" did not support the Board's denial of parole; (2) the Board improperly relied on his commitment offense to deny parole; and (3) the Board relied on an unconstitutionally vague provision of title 15 of the California Code of Regulations to deny parole.[1] On July 14, 2008, Respondent Warden Ben Curry filed an answer. Petitioner timely filed a

---

[1] Unless otherwise noted, all further references to code sections are to title 15 of the California Code of Regulations.

traverse. Having considered all of the papers filed by the parties, the Court DENIES the petition.

## BACKGROUND

I.   Commitment Offense

At the time of the commitment offense, Petitioner was nineteen years old. Between August, 1988 and September 19, 1988, members of rival street gangs, the "Four Trey Hoover Crips" (the Crips) and the "Budlong Boys," were involved in a series of disputes over drug trafficking territories. (Pet.'s Ex. A, 2005 Parole Bd. Hr'g at 67.) In August, 1988, members of the Crips shot Pat Cole, a member of another street gang with which Petitioner and co-defendant Corey Willis were associated. (Pet.'s Ex. D, People v. Willis, et al., No. B051979 at 2 (Cal. App. Ct., Feb. 14, 1994).) The Crips also shot at a "drug house" operated by Willis. (Id. at 3.) In retaliation, on September 18, 1988, Petitioner, Willis and a third person fired gunshots at a Crips drug House. (Id.) Then, on September 19, 1988, Petitioner, Willis and co-defendant Jerome Ray armed themselves and went to a residence located at 1049 West 43rd Street in Los Angeles, California. (Pet.'s Ex. A, 2005 Parole Bd. Hr'g at 67.)

Petitioner and his co-defendants arrived at the residence at 2:40 a.m. (Id.) Petitioner was armed with a nine millimeter automatic handgun, Willis was armed with an AK-47 automatic rifle, and Ray was armed with a handgun. (Id.) After observing the victim, Andre Hicks, and a number of other persons who were standing in the front yard, Petitioner and co-defendants began shooting. (Id. at 67-68.)

2

1    The Los Angeles Police Department (LAPD) investigative report
2 indicated that Petitioner had fired in excess of twenty rounds from
3 his gun.  (Id. at 68.)  One of the assailants' rounds entered the
4 victim's head on the left side and exited through the back.  (Id.)
5 Although the injury was consistent with an AK-47 rifle, the fatal
6 bullet was not recovered.  (Id.)  The victim was pronounced dead at
7 the scene at approximately 3:00 a.m. on September 19, 1988.  (Id.)
8    Petitioner and Willis were charged with murder.  (Pet.'s Ex.
9 D, People v. Willis, et al., No. B051979 at 3.)  However, because
10 it was not clear that Petitioner had actually shot the victim, the
11 district attorney offered to allow him to plead guilty to
12 manslaughter in exchange for testifying against co-defendant
13 Willis.  (Pet.'s Ex. A, Parole Bd. Hr'g at 52-53.)  Fearing
14 retaliation against his family, Petitioner declined the plea
15 bargain.  (Id. at 53-54.)
16    A jury found Petitioner guilty of second degree murder and
17 found the gun enhancement allegations to be true.  (Pet.'s Ex. D,
18 People v. Willis et al, No. B051979 at 3.)  The court sentenced
19 Petitioner to fifteen years to life, plus a two-year enhancement
20 for firearm use.  (Id.)  Petitioner was received by the Department
21 of Corrections on May 31, 1990.  (Pet.'s Ex. B, 2005 Prisoner Eval.
22 at 1.)  His minimum parole eligibility date was April 22, 2000.
23 (Id.)

24 II.  Parole Hearings
25    In March, 1999, Petitioner had his first hearing before the
26 Board, which found that he was unsuitable for parole.  (Pet.'s Ex.
27 B, 1999 Prisoner Eval. at 2.)  In support of its finding, the Board
28

3

1  cited the nature of Petitioner's commitment offense, two juvenile
2  arrests in 1985 and 1986 for carrying a concealed weapon, and
3  several disciplinary violations that he had received since he had
4  been incarcerated.  (Id. at 1-2.)  The Board recommended that
5  Petitioner remain disciplinary-free, upgrade academically and
6  vocationally, and participate in self-help programs.  (Id. at 3.)
7       In April, 2003, at his second parole hearing, the Board again
8  found Petitioner unsuitable for parole.  (Pet.'s Ex. B, 2003
9  Prisoner Eval. at 3.)  The Board acknowledged that Petitioner had
10 followed its recommendations from the first parole hearing, but,
11 nevertheless, found that Petitioner "would pose a moderate degree
12 of threat to the public . . . if released from prison."  (Id.)  In
13 support of its finding, the Board again cited Petitioner's
14 commitment offense, juvenile record, and record of disobeying
15 orders of prison staff.  (Id. at 2-3.)  The Board recommended that
16 Petitioner remain disciplinary-free and continue with his
17 educational, vocational, and self-help development.  (Id.)
18      On September 29, 2005, Petitioner attended his third parole
19 hearing.  (Pet.'s Ex. A, 2005 Parole Bd. Hr'g at 1.)  The Board
20 cited several factors favoring Petitioner's suitability for parole.
21 For example, it noted that, since Petitioner had been in prison, he
22 had completed his general education development (GED) classes,
23 attended college classes by correspondence, completed vocational
24 training in computer services, and taken real estate classes.  (Id.
25 at 70.)  The Board also noted that Petitioner had engaged in
26 several self-help programs, including Narcotics Anonymous for which
27 he had served as chairman.  (Id.)  Further, Petitioner's prison

4

psychiatric report assessed him as posing no more danger of violence to the community than the average citizen. (Id. at 69.) The Board also noted that Petitioner had realistic parole plans in that he has marketable welding skills and several family members have offered him employment options and a place to live. (Id.)

The Board also cited several factors tending to indicate unsuitability for parole. The Board found that the commitment offense was carried out in an "especially cruel and callous manner" because Petitioner and his co-defendants had opened fire in a residential area. (Id. at 66.) It found that the commitment offense was carried out in a "calculated manner" because Petitioner and his co-defendants had gone to the scene of the crime armed with "sophisticated and high powered weapons." (Id.) It found that Petitioner and his co-defendants had carried out the commitment offense with "exceptionally callous disregard to human suffering" because the "spray of bullets" could have injured other people. (Id. at 66-67.) The Board cited as evidence the twenty rounds which Petitioner had fired from his nine millimeter gun. (Id. at 67.) Because the commitment offense appeared to be gang-related, the Board found that the "motive for the crime was . . . trivial." Id. In addition to its findings regarding the commitment offense, the Board considered Petitioner's juvenile record and disciplinary violations since his prior parole hearing in 2003. (Id. at 68-69.) The Board noted that Petitioner had received one CDC-128-A counseling chrono on November 4, 2003, for stealing state-owned food (cookies), another CDC-128 on March 9, 2004, for failing to respond promptly and courteously to prison staff, and a more

5

1  serious CDC-115 rules violation report on May 22, 2004 for having
2  an unauthorized "cooking utensil" in his cell.[2]  (Id. at 39-40.)
3       In response, Petitioner explained his version of the
4  commitment offense.  (Pet.'s Ex. B, 2005 Prisoner Eval. at 1.)
5  Petitioner admitted that he fired the rounds from his gun, but
6  claimed that he did not intend to hit anyone.  (Id.)  According to
7  Petitioner, his intent was to accompany Willis to the victim's
8  house so that Willis could have a conversation with the victim.
9  (Id.)  Petitioner stated that, before he knew it, things got out of
10 hand and shots were fired.  (Id.)  Petitioner expressed remorse for
11 the offense and stated that he had never been a gang member.  (Id.)
12      The Board found that the factors indicating unsuitability for
13 parole outweighed the factors indicating suitability.  (Pet.'s Ex.
14 A, 2005 Parole Bd. Hr'g at 70.)  The Board found that Petitioner
15 would pose an unreasonable risk of danger to society or a threat to
16 public safety if released.  (Id. at 66.)  It denied parole for four
17 years and recommended that Petitioner get more self-help and
18 therapy, and remain disciplinary-free.  (Id. at 71-72.)
19 III. Habeas Corpus Petitions
20      On August 30, 2006, Petitioner filed a petition for a writ of
21 habeas corpus in Los Angeles County superior court, alleging that

---

[2] CDC-128-A and CDC-115 refer to different CDC forms used by prison officials to report rules violations.  Prison staff use a CDC-128-A form to document repeated minor misconduct and a CDC-115 form for misconduct that is not minor or is believed to violate the law.  Cal. Code. Regs. tit. 15 § 3312(a).

6

there was no evidence to support the Board's 2005 determination that he was not suitable for parole and that the decision violated his due process rights. (Resp't's Ex. 1, Super. Ct. Form Pet. at 3; Resp't's Ex. 1, Super. Ct. Pet. at 20.) On September 4, 2007, in a two-page opinion, the court denied the petition. (Pet.'s Ex. E at 1.) The court concluded "that the record contains 'some evidence' to support the determination that Petitioner presents an unreasonable risk of danger to society and is, therefore, not suitable for release on parole." (Id.) In support of its conclusion, the court found that the record showed Petitioner and his co-defendants knew that they were going to the scene of the crime to confront rival gang members and had heavily armed themselves for that purpose. (Id.) It found that this supported the Board's finding that the commitment offense was carried out in a "calculated and dispassionate manner," as set forth in § 2402(c)(1)(B). (Id.) The court also found that Petitioner had received one CDC-115 and three CDC-128-A's since his previous parole hearing, and that this also supported the Board's finding that Petitioner was unsuitable for parole based on his poor institutional behavior, as set forth in § 2402(c)(6). (Id. at 313-314.) The court also concluded that it was proper for the Board to justify postponing parole for four years using the same factors it had used to justify denial of parole. (Id. at 314.)

On November 30, 2007, Petitioner raised the same claims in his state habeas petition to the California court of appeal, which summarily denied it on December 13, 2007. (Resp't's Ex. 3, Ct. App. Pet.; Resp't's Ex. 4, Ct. App. Order.) Petitioner then filed

7

a petition for review with the California Supreme Court, which summarily denied it on February 27, 2008. (Resp't's Ex. 5; Resp't's Ex. 6.) Respondent concedes that Petitioner exhausted his state court remedies. (Resp't's Answer at 2.) On April 11, 2008, Petitioner timely filed this federal habeas petition.

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000). The first prong applies both to questions of law and to mixed questions of law and fact, Williams, 529 U.S. at 407-09, and the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, under the second clause of § 2254(d)(1),

8

if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. Id. at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." Miller-El, 537 U.S. at 340. A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. Id. Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion to analyze whether the state judgment was erroneous under the standard of § 2254(d). Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). In the present case, the only state court to address the merits of Petitioner's claim is the Los Angeles County superior court.

DISCUSSION

I. Jurisdiction

Respondent argues that the Court does not have subject matter jurisdiction on the ground that the denial of state parole does not affect a liberty interest protected by the United States Constitution. The Ninth Circuit, however, has rejected the contention that California prisoners have no liberty interest in parole and thus have no federal due process rights in connection with parole eligibility. See Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006). Therefore, the Court has subject matter jurisdiction, under 28 U.S.C. § 2254, to decide whether Petitioner's Fourteenth Amendment right to due process was violated by the Board's determination that he was not suitable for parole.

II. Due Process Claims

A. "Some Evidence" Test

Petitioner argues that the Board's decision denying parole violated his due process rights because it was not supported by some evidence and, therefore, was arbitrary. The Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process with respect to his constitutionally protected liberty interest in a parole release date if the board's decision is not supported by "some evidence in the record," or is "otherwise arbitrary." Sass, 461 F.3d at 1128 (citing Superintendent v. Hill, 472 U.S. 445, 457 (1985)). An examination of the entire record is not required nor is an independent weighing of the evidence. Id. The "some evidence" standard is minimal, and

10

assures that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." Sass, 461 F.3d at 1129 (quoting Hill, 472 U.S. at 457). The relevant question is whether there is some evidence in the record that could support the conclusion reached by the administrative board. Hill, 472 U.S. at 455.

When assessing whether a state parole board's unsuitability determination is supported by "some evidence," the court's analysis is framed by the guidelines set forth in the statutes and regulations governing parole suitability determinations in the relevant state. Sass, 461 F.3d at 1128. California law provides, "Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the [Board] the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code Regs. tit. 15, § 2402(a). The Board is required to consider "all relevant, reliable information available," such as:

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, § 2402(b).

Circumstances tending to show unsuitability for parole include

11

the nature of the commitment offense and whether "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner." Cal. Code Regs. tit. 15, § 2402(c). This includes consideration of the number of victims, whether "[t]he offense was carried out in a dispassionate and calculated manner," whether the victim was "abused, defiled or mutilated during or after the offense," whether "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and whether "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Id.

Other circumstances tending to show unsuitability for parole are a previous record of violence, an unstable social history, previous sadistic sexual offenses, a history of severe mental health problems related to the offense, and serious misconduct in prison or jail. Id.

In contrast, circumstances tending to support a finding of suitability for parole include no juvenile record, a stable social history, signs of remorse, that the crime was committed as a result of significant stress in the prisoner's life, a lack of criminal history, a reduced possibility of recidivism due to the prisoner's present age, that the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release, and that the prisoner's institutional activities indicate an enhanced ability to function within the law upon release. Cal. Code Regs. tit. 15, § 2402(d).

Applying these guidelines here, there is some evidence to support the Board's finding that Petitioner was unsuitable for

12

1  parole. The Board's determination that Petitioner "would pose an
2  unreasonable risk of danger to society or a threat to public safety
3  if released from prison" was supported by its finding that
4  Petitioner and his co-defendants had carried out the commitment
5  offense in an "especially cruel and callous manner." Id.

> [Petitioner] and his crime partners went to . . . a
> residential neighborhood and proceeded to open fire
> with an AK-47 and a nine millimeter gun. The offense
> was carried out in a calculated manner, in that . . .
> [Petitioner] and his crime partner armed themselves and
> went to the scene with sophisticated and high powered
> weapons. The offense was carried [out] in a manner
> which . . . demonstrates an exceptionally callous
> disregard to human suffering in that . . . there is no
> telling what other individuals could've been in the
> area . . . that might have been affected or even
> injured by this spray of bullets. [T]here was evidence
> of 20 rounds being fired from the nine millimeter gun
> that [Petitioner] used. And the motive for the crime
> [was] very trivial [in] relation to the offense in that
> it appears from the record that it was some type of
> gang activity.

Id. at 66-67.

In addition to the nature and circumstances of the commitment offense, the Board considered other parole unsuitability factors, such as Petitioner's juvenile record of two convictions for carrying a concealed weapon in 1985 and 1986 and his misconduct while incarcerated, citing his "three 128a counseling chronos and one serious 115," all of which he received since his previous parole hearing in 2003.[3]

Despite the evidence that the Board cited to support its

---

[3] According to the Board, Petitioner received three CDC-128-A's and one CDC-115 disciplinaries between his 2003 and 2005 parole hearings. The Court finds evidence in the record of two CDC-128A's and one CDC-115, which leaves one CDC-128A unaccounted for.

13

decision, Petitioner argues that his young age at the time of the commitment offense, the district attorney's plea bargain offer of manslaughter, and the fact that none of his disciplinary violations was violent justify granting parole.  The Court cannot re-weigh evidence already considered by the Board.  Powell v. Gomez, 33 F.3d 39, 42 (9th Cir. 1994).  Instead, the Court looks only to see if the record supports the minimally stringent "some evidence" standard.  Id.  Because some evidence supports the Board's finding that Petitioner "would pose an unreasonable risk of danger to society" and was, therefore, "not suitable for parole," the Board's decision complied with the requirements of due process in accordance with the Ninth Circuit's holding in Sass.  461 F.3d at 1128.  Therefore, the state court's denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law.

B.   Immutable Circumstances

Citing Biggs v. Terhune, 334 F.3d 910, 915-16 (9th Cir. 2003), Petitioner argues that, in denying parole, the Board violated his right to due process by relying on the immutable circumstances of the commitment offense.  In Biggs, the Ninth Circuit found that the denial of parole based solely on the gravity of the commitment offense can initially satisfy due process requirements.  Id. at 916.  However, in dicta, the Biggs court stated that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."  Id. at 917.

14

The Ninth Circuit has not specified the number of denials or the length of time served beyond the minimum sentence that would constitute a due process violation.  Petitioner was denied parole by the Board three times.  In Irons v. Carey, a court in the Eastern District of California granted a habeas petition challenging the Board's denial of parole after a similar number of parole hearings where the petitioner had served sixteen years of a seventeen-years-to-life sentence for second degree murder with a two-year enhancement for use of a firearm where all factors indicated suitability for parole; the Ninth Circuit reversed.  358 F. Supp. 2d 936, 947 (E.D. Cal. 2005), rev'd, 505 F.3d 846 (9th Cir. 2007) (given the egregiousness of the commitment offense, due process not violated when Board deemed petitioner unsuitable for parole prior to expiration of his minimum term).

In another case, a court in the Eastern District granted a habeas petition, finding a due process violation in the denial of parole at the petitioner's twelfth parole suitability hearing after he had served twenty-four years of a sentence of life with the possibility of parole for first degree murder where all factors indicated suitability for parole.  Johnson v. Finn, 2006 WL 195159, 12 (E.D. Cal. 2006); appeal docketed, No. 06-17042 (9th Cir. Oct. 30, 2006).

Here, the state court correctly found that the Board relied on more than the "unchanging factor" of Petitioner's commitment offense and criminal history in denying him parole.  Although the "cruel and callous" nature of Petitioner's commitment offense factored into the Board' determination, Petitioner's disciplinaries

15

since his prior parole hearing also weighed heavily against parole. Pet.'s Ex. A, 2005 Parole Bd. Hr'g at 71. The Board stated that all of Petitioner's self-help achievements would be "zeroed out" as long as he continued to receive disciplinaries between parole hearings. Id. Based on the foregoing, the state court's denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law.

The Ninth Circuit's evolving guidance in Biggs, Sass, and Irons suggests that the Board may continue to evaluate static factors, including the nature of the commitment offense and pre-conviction criminality, in deciding whether to grant parole. See Sass, 461 F.3d at 1129. The weight to be attributed to those immutable events, however, should decrease as a predictor of future dangerousness as the years pass and the prisoner demonstrates favorable behavior. See Biggs, 334 F.3d at 916-17; Irons, 505 F.3d at 851. Should Petitioner follow the Board's advice by maintaining a positive disciplinary record, continued parole denials based on Petitioner's commitment offense alone could eventually give rise to a due process violation. See Biggs, 334 F.3d at 916-17.

C. Four-Year Parole Denial

Petitioner also claims that the state court erred in that it failed to address the merits of the Board's four-year parole denial. Petitioner, however, cites no controlling authority for the proposition that this four-year denial constitutes a violation of his due process or other federal rights. Therefore, the state court's decision not to address this claim was not contrary to, or an unreasonable application of, clearly established federal law.

16

III. Vagueness

Petitioner argues that the state court's decision was based on an unconstitutionally vague parole regulation. Specifically, Petitioner challenges the court's reliance on § 2402(c)(1), which provides that a prisoner may be unsuitable for parole where the underlying offense was committed "in an especially heinous, atrocious, or cruel manner." According to Petitioner, the state court's reliance on this language was contrary to clearly established federal law because the Supreme Court has held similar statutory and regulatory language to be unconstitutionally vague. See Maynard v. Cartwright, 486 U.S. 356, 361-64 (1988) (striking down an aggravating circumstance statutory provision that permitted juries to consider whether a murder was "especially heinous, atrocious, or cruel").

Vagueness challenges made under the Due Process Clause "rest on the lack of notice." Id. at 361. Petitioner correctly points out that a statute or regulation is unconstitutionally vague "if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes, or if it invites arbitrary and discriminatory enforcement." United States v. Doremus, 888 F.2d 630, 634 (9th Cir. 1989). Vagueness challenges to statutes or regulations that do not threaten First Amendment rights, such as this one, are analyzed on an as-applied basis. Maynard, 486 U.S. at 361. Thus, the issue before the Court is whether § 2402(c)(1) provided Petitioner with adequate notice and the state court with adequate guidance.

This issue was addressed in McCottrell v. Ayers, 2007 WL

17

4557786 at *9-10 (N.D. Cal.). In <u>McCottrell</u>, a California inmate was deemed unsuitable for parole based, in part, on the "heinous, atrocious, and cruel" nature of his commitment offense. <u>Id.</u> The inmate argued that the language "heinous, atrocious, and cruel," contained in § 2281(c)(1), was unconstitutionally vague. <u>Id.</u> The court disagreed and held that the language was properly clarified by the five sub-factors set forth in §§ 2281(c)(1)(A)-(E), which include: (A) whether multiple victims were attacked; (B) whether the offense was carried out in a dispassionate and calculated manner; (C) whether the victim was abused, defiled or mutilated during the offense; (D) whether the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human life; or (E) whether the motive for the crime is very trivial in relation to the offense. <u>Id.</u> These sub-factors are identical to those which are set forth in §§ 2402(c)(1)(A)-(E) and which guided the Board's determination that Petitioner was unsuitable for parole.

The Court is persuaded by the reasoning in <u>McCottrell</u>. The statute at issue in <u>Maynard</u>, the case Petitioner cites in support of his argument, is distinguishable from § 2402(c)(1). In <u>Maynard</u>, the court struck down the "especially heinous, atrocious, or cruel" aggravating circumstance provision in Oklahoma's capital punishment statute, holding that it was unconstitutionally vague because it failed to guide the jury's discretion in determining whether to impose the death penalty. <u>Id.</u> In contrast, §§ 2402(c)(1)(A)-(E) limit the construction of "especially heinous, atrocious, or cruel" offenses to those characterized by five clearly defined sub-

18

factors.

Further, because these sub-factors are set forth in simple plain words, such that a reasonable person of ordinary intelligence would understand their meaning and the conduct they proscribe, the notice requirement is satisfied. See United States v. Hogue, 752 F. 2d 1503, 1504 (9th Cir. 1985)(ruling that a defendant is deemed to have fair notice of an offense if a reasonable person of ordinary intelligence would understand that his or her conduct is prohibited by the rule in question). And, as to the enforcement requirement, the state court concluded that the Board properly found that the commitment offense satisfied one of the sub-factors in that it had been carried out in a "calculated and dispassionate manner." See Cal. Code. Regs. tit. 15 § 2402(c)(1)(B); Pet.'s Ex. E, Super. Ct. Decision at 1. In support of this, the state court cited the Board's finding that Petitioner and his co-defendants arrived heavily armed, with the intent to confront the rival gang members and retaliate for a prior assault by that gang. Id. The court also noted, "Although Petitioner did not actually shoot the victim and claims that he only fired shots at the ground and in the air, he was acting in concert with his co-defendants and, therefore, their actions are imputed to him. Petitioner knew they were going to the location to confront the rival gang members and brought a gun for that purpose." Id. Based on the foregoing, § 2402(c)(1) was not unconstitutionally vague as applied to Petitioner's case. Therefore, the state court's denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law.

19

CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.  The Clerk of the Court shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: 6/30/09

CLAUDIA WILKEN
United States District Judge